**Samuel Richmond WALKER,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–04–00757–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 29, 2005.

Henry L. Burkholder, III, Houston, for appellant.

Bridget Holloway, Houston, for state.

Panel consists of Chief Justice HEDGES and Justices YATES and ANDERSON.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant Samuel Richmond Walker appeals his conviction for aggravated robbery.[1] In his first nine points of error, appellant alleges that certain testimony by Detective Michael Parinello was hearsay and also violated his Sixth Amendment right to confrontation and cross-examination. In his last two points of error, appellant alleges that the evidence is legally and factually insufficient to support his conviction. We reverse and remand.

### Background

On June 15, 2002, complainant Matilde Delgato was robbed at gunpoint in a Wal–Mart parking lot. Delgato was sitting in her car with her three sons when a man approached, put a gun to her chest, and ordered her to give him her purse or he would kill her. Delgato, who does not speak English, asked her thirteen-year-old son Eric to translate for her. Eric, who was sitting in the front passenger seat, told Delgato to give the man her purse, which she did. The purse contained credit cards, checks, jewelry, and the family's identification documents. The robber left the scene in a small red car driven by a woman.

Two days later, Officer Kathy Richards arrested Dedra Dangerfield for public intoxication. In Dangerfield's purse were Delgato's identification documents and other stolen property. Richards then contacted Detective Michael Parinello, who was

investigating the robbery. Parinello interviewed Dangerfield in jail and learned the nicknames of two potential suspects: "Pocahontas" and "Low Down." Parinello then learned from a data bank that Pocahontas and Low Down were the nicknames of Noralva Ramos and appellant Samuel Richmond Walker.

Two weeks after the robbery, Parinello assembled photo spreads containing photos of Dangerfield, Ramos, and appellant and showed them to Delgato and Eric. Delgato could not identify anyone in the photo spreads; however, Eric picked appellant out of the photo spread and also identified him in court as the man who had robbed them. At trial, Parinello testified that he had also shown the photo spreads to Dangerfield, who identified Ramos as the person she knew as Pocahontas and appellant as the person she knew as Low Down. Dangerfield did not testify at trial.

Delgato testified that the robbery lasted about twenty seconds. She also admitted that she had not seen the perpetrator approach her car and that she did not get a good look at his face. Delgato also testified that she saw only the tip of a black gun because the robber had draped a jacket or sweatshirt over his arm and most of the gun.

Eric testified that the robbery lasted between one and two minutes, although security tapes indicated that the encounter was less than a minute. Eric also testified that he clearly saw the perpetrator's face even though the man was wearing a hood. He stated that he saw only a couple inches of a black gun because the man's sleeve hid the rest of the weapon and because he had been concentrating more on the man's face. Eric also testified that he had seen the red car drive around the parking lot

---

1. A jury convicted appellant and assessed a punishment of forty-five years' confinement in the Texas Department of Criminal Justice Institutional Division.

for several minutes before the robbery occurred.[2]

### Legal and Factual Sufficiency

We first consider appellant's arguments that the evidence is legally and factually insufficient to support his conviction. In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Crim.App.2002). This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim. App.1995). Although we consider all evidence presented at trial, we may not reweigh the evidence and substitute our judgment for that of the jury. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, and it is the exclusive province of the jury to reconcile conflicts in the evidence. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim.App.2000).

In a factual sufficiency review, we must view all the evidence in a neutral light and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State,* 144 S.W.3d 477, 484 (Tex.Crim.App.2004). Evidence is factually insufficient if, when considered by itself, the evidence supporting the verdict is too weak to support a finding of guilt beyond a reasonable doubt and thus renders the conviction clearly wrong and manifestly unjust. *Id.* at 485; *Vasquez,* 67

S.W.3d at 236. Alternatively, evidence is factually insufficient if the evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard cannot be met, even if evidence supporting guilt outweighs the evidence to the contrary. *Zuniga,* 144 S.W.3d at 484. Again, the reviewing court may not substitute its own judgment for that of the jury and may not intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Vasquez,* 67 S.W.3d at 236.

■ Viewing the evidence in the light most favorable to the verdict, we find that the evidence is legally sufficient to support appellant's conviction beyond a reasonable doubt. To obtain a conviction for aggravated robbery, the state needed to prove that (1) appellant unlawfully appropriated Delgato's property with the intent to deprive her of it; (2) appellant intended to obtain or maintain control of Delgato's property; and (3) appellant used or exhibited a deadly weapon. Tex. Pen.Code Ann. §§ 29.02, 29.03, 31.03 (Vernon 2003). The robber's identity was the only point of contention in this case.

At trial, Eric Delgato testified that he had studied the robber's face and had seen it clearly. He also identified appellant in a photo array and in court as the man who held a gun to his mother's chest. Eric's identification is legally sufficient because a conviction may be based on the testimony of only one eyewitness. *Aguilar v. State,* 468 S.W.2d 75, 77 (Tex.Crim.App.1971). Additionally, Parinello's testimony that Dangerfield identified appellant as the man she knew as Low Down linked appellant to the crime because Delgato's belongings were found in Dangerfield's posses-

---

**2.** Eric left the store before his mother and brothers to listen to the radio and turn on the air conditioning in the car. He testified that he saw the red car in which the robber even-

tually escaped circling the parking lot while the rest of his family was still inside the Wal–Mart.

sion.[3] Thus, viewing the evidence in the light most favorable to the verdict, we find that the evidence is legally sufficient to support appellant's conviction for aggravated robbery.

■ Viewing the evidence in a neutral light, we also find that a jury rationally could have found appellant guilty of aggravated robbery beyond a reasonable doubt. Even though Delgato was unable to identity appellant, Eric identified him in both the photo spread and in open court. Although defense counsel attempted to impeach Eric by emphasizing that the robbery had lasted only a few seconds, that the perpetrator had been wearing a hood, and that Eric was only thirteen at the time, the jury is the sole judge of a witness's credibility, and it apparently found Eric to be credible. Furthermore, Dangerfield had Delgato's stolen property in her possession and identified appellant as Low Down; these facts suggest that appellant was involved in the robbery. Thus, viewing the evidence in a neutral light, we find that the evidence is factually sufficient to support appellant's conviction.

### Right to Confrontation

In his sixth and eighth points of error, appellant argues that the trial court violated his federal right to confrontation and cross-examination by allowing Parinello to testify that Dangerfield identified photographs of Ramos and appellant. We agree.

In *Crawford v. Washington*, the United States Supreme Court held that the admission of incriminating testimonial out-of-court statements violates a defendant's Sixth Amendment right to confrontation and cross-examination when the defendant

has had no opportunity to cross-examine the declarant. 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Although the Court declined to provide a comprehensive definition of "testimonial," it explained that a statement is testimonial if it was "made under circumstances which would lead an objective [declarant] reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52, 124 S.Ct. 1354. The Court also specified that the term "testimonial" includes statements taken by police officers during interrogations and noted that it was using the term "interrogation" in a colloquial rather than a technical legal sense. *Id.* at 52, 53 n. 4, 68, 124 S.Ct. 1354. To illustrate this point, the Court asserted that the declarant's recorded statement, "knowingly given in response to structured police questioning," qualified as testimonial under any conceivable definition of "interrogation." *Id.* at 53 n. 4, 124 S.Ct. 1354.

■ In determining whether statements are testimonial, Texas courts generally have looked to the degree of formality of a declarant's interaction with police, the purpose and structure of police questioning, and the likelihood that the declarant expects that the statements could be used in a criminal prosecution. *See, e. g., Tyler v. State*, 167 S.W.3d 550, 555 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) (holding that victim's explanation of what had transpired was nontestimonial because it merely aided the start of the investigation and the officer did not ask questions); *see also Wilson v. State*, 151 S.W.3d 694, 698 (Tex.App.-Fort Worth 2004, no pet.) (holding that statements were nontestimonial because there

---

**3.** Although defense counsel objected to Parinello's testimony regarding Dangerfield's role in the investigation, an appellate court must consider all the evidence admitted at trial in conducting its sufficiency review. *Moff v. State*, 131 S.W.3d 485, 489 (Tex.Crim.App. 2004).

was no interrogation when witness initiated contact with police and the purpose of officers' questions was not to elicit information about known criminal activity); *Gutierrez v. State*, 150 S.W.3d 827, 830 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that accomplice's videotaped statement to police after defendant's arrest was testimonial); *Lee v. State*, 143 S.W.3d 565, 570–71 (Tex.App.-Dallas 2004, pet. ref'd) (holding that statement was testimonial because circumstances were sufficiently formal when declarant made the statement during a traffic stop in response to police questioning and the statement was videotaped); *Brooks v. State*, 132 S.W.3d 702, 707 (Tex.App.-Dallas 2004, pet. ref'd) (holding that co-defendant's written custodial statement made during investigation of charged offense was testimonial). This precedent suggests that testimonial statements "involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings," and that the procedure used to procure the statement determines whether the statement is testimonial. *Tyler*, 167 S.W.3d at 553 (citing *Scott v. State*, 165 S.W.3d 27, 46 (Tex. App.-Austin 2005, pet. stricken)); *Wiggins v. State*, 152 S.W.3d 656, 659 (Tex.App.-Texarkana 2004, pet. ref'd) (citing *United States v. Saget*, 377 F.3d 223, 228 (2nd Cir.2004)).

■ We find that Dangerfield's identifications of Ramos and appellant qualify as testimonial statements. Parinello approached Dangerfield while she was in police custody to question her about an ongoing criminal investigation and asked her to identify suspects in that investigation. These facts demonstrate that the setting was sufficiently formal and structured to qualify as a police interrogation. Additionally, under these circumstances, Dangerfield reasonably could have believed that her identifications would be used in the subsequent trials of Ramos and appellant. Therefore, we find that the admission of Dangerfield's incriminating out-of-court testimonial statements violated appellant's Sixth Amendment rights.

■ The State argues that the confrontation issue is not preserved for appeal because defense counsel failed to object and obtain a ruling after each question. We disagree. To preserve constitutional error, counsel must timely and specifically object to the complained-of testimony; a defendant waives his right to confront witnesses if defense counsel does not object on confrontation grounds at trial. *See* TEX. R.APP. P. 33.1(a); *Oveal v. State*, 164 S.W.3d 735, 739 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd); *Bunton v. State*, 136 S.W.3d 355, 369 (Tex.App.-Austin 2004, pet. ref'd) (holding that appellant waived Confrontation Clause complaint by failing to object at trial and rejecting argument that because *Crawford* established a new constitutional principle, an objection would have been futile).

We find that appellant's defense counsel preserved the confrontation issue by making adequate objections at trial. We quote briefly from the State's direct examination of Parinello to illustrate this point:

[Prosecutor]: In connection with the photo spread containing Pocahontas also known as Noralva Ramos, did Dedra Dangerfield make an identification as to who she knew to be that person?

[Defense Counsel]: *Same objection, Judge. Nontestifying witness, out of*

*court hearsay, and confrontational* (emphasis added).[4]

The Court: Overruled.

[Parinello]: Yes, she did.

[Prosecutor]: And who did she identify?

[Defense Counsel]: *Same objection* (emphasis added).

[Parinello]: She identified the photograph in the Number 4 position as Noralva Ramos.

[Prosecutor]: In connection with State's Exhibit 2, the photo spread containing Samuel Richmond Walker, did you show that photo spread to her as well?

[Parinello]: Yes.

[Prosecutor]: Was Dedra Dangerfield able to identify anyone in that photo spread?

[Defense Counsel]: *Same objection again, Judge* (emphasis added).

The Court: That will be overruled.

[Parinello]: Yes.

[Prosecutor]: What was her identification?

[Parinello]: She identified the person in Number 6 as the person she knew as Low Down.

Clearly, defense counsel made three objections on confrontation grounds, two of which were overruled.[5] Although counsel did not object after every question and failed to obtain a ruling after one objection, to do so likely would have frustrated both the judge and the jury, and also may not have been possible before Parinello answered the prosecutor's questions. The record indicates that counsel persistently objected to questions regarding Danger-

field's identification of both Ramos and appellant; therefore, we find that the confrontation issue was preserved for appeal.

■ The State also contends that any error by the trial court was harmless. According to the State, Parinello's testimony regarding Dangerfield's identification of Pocahontas as Ramos was "completely irrelevant" to appellant's conviction. Furthermore, the State claims that the only significant facts proved by the challenged testimony were that appellant was known as "Low Down" and that Dangerfield knew him as such. We disagree.

■ We evaluate harm in this case under the constitutional standard. When conducting a harmless error review, an appellate court must reverse a judgment of conviction unless it determines beyond a reasonable doubt that the error did not contribute to the conviction. TEX.R.APP. P. 44.2(a). The reviewing court should be concerned with the integrity of the process leading to the conviction and should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). Essentially, the reviewing court should ask whether the jurors were able to properly apply law to facts in order to reach a verdict. *Id.* If the error was of a magnitude that it disrupted the jury's orderly evaluation of the evidence, then the conviction is tainted. *Id.* at 588.

---

4. The record indicates that "same objection" refers to an objection that defense counsel made several pages earlier when the prosecutor asked Parinello whether Eric Delgato had identified appellant in the photo spread. At that time, counsel had stated: "Violates confrontational clause and it's hearsay."

5. The record reveals a similar pattern throughout Parinello's testimony; counsel objected numerous times on confrontation or hearsay grounds, and the court overruled the vast majority of these objections. We find these additional objections indicative of defense counsel's consistent efforts to exclude portions of Parinello's testimony.

We cannot determine beyond a reasonable doubt that the challenged testimony did not contribute to appellant's conviction. Although Parinello avoided stating explicitly that Dangerfield had received Delgato's stolen property from either Ramos or appellant, Dangerfield's identifications of Ramos and appellant as Pocahontas and Low Down implicitly link appellant to the crime. The record reveals that Eric Delgato identified appellant as the perpetrator, that a woman drove the red get-away car, and that Dangerfield possessed Delgato's property two days after the robbery; in the context of this evidence, Dangerfield's identifications suggest that Ramos/Pocahontas and appellant/Low Down robbed Delgato and that Dangerfield acquired the stolen property from them. Furthermore, in its closing argument, the State highlighted the significance of Dangerfield's identifications and characterized her statements as fundamental evidentiary links:

> [Parinello] shows the photo spread with Samuel Walker in it, and Dedra Dangerfield said that's Low Down. That's who I was talking about. She is not a witness to the robbery, *but she is the one who connects up the names.*
>
> . . .
>
> Detective Parinello told you Dedra Dangerfield picked Samuel Walker also known as Low Down out of that photo spread, State's Exhibit 2.
>
> You know what? Have you seen a better photo spread?
>
> He is Number 6. Eric picked him out like that. "I'm sure that's him, Detective Parinello. I'm sure of it. That's the man who put the gun to my mother's chest."
>
> Two days later Detective Parinello has the information. *Dedra Dangerfield has now made the positive identification.*

> "That's Low Down, and that's Pocahontas. That's Samuel Walker."
>
> So, now with that information he knows he has got the right person known as Low Down based on what Dedra Dangerfield's identification is . . . (emphasis added).

This emphasis on Dangerfield's identifications of Ramos and appellant indicates that Dangerfield's out-of-court statements were much more significant than the State acknowledges on appeal. Therefore, we cannot determine beyond a reasonable doubt that the challenged testimony did not contribute to appellant's conviction.

We sustain appellant's sixth and eighth points of error and hold that the admission of Dangerfield's testimonial out-of-court statements violated appellant's Sixth Amendment rights. Because we sustain appellant's sixth and eighth points of error, we need not address appellant's remaining points of error. We reverse and remand to the trial court.