Affirmed and Memorandum Opinion filed July 24, 2007








Affirmed and Memorandum Opinion filed July 24, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00620-CR

____________

 

HAROLD V. GILMORE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 263rd
District Court

Harris County, Texas

Trial Court Cause No. 1033717

 



 

M E M O R A N D U M   O P I N I O N

Appellant Harold V. Gilmore was convicted of aggravated
robbery and sentenced to forty years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In three
issues, he challenges the legal and factual sufficiency of the evidence to
support his conviction and the sufficiency of the evidence to support the prior
convictions used to enhance his punishment.  We affirm. 








  Factual and Procedural Background

At trial, the State contended that in the early morning
hours of May 28, 2005, appellant and Leroy Collins,[1]
his co-worker at the 99 Cent Store on Scott Street in Houston, Texas, robbed
the store and seriously injured their co-worker and the complainant, Liaquat
Ali, as Ali worked the night shift.  The State called five witnesses.  Sergeant
R.C. Speckman testified that around 5:45 a.m. on May 28 he was dispatched to
the 99 Cent Store.  Sergeant Speckman looked through the store=s glass front
doors and saw Ali lying face down in a pool of blood, and Sergeant Speckman
immediately called for backup and an ambulance.  Because he did not see a sign
of forced entry at the front doors, Sergeant Speckman searched the premises for
a point of entry and found on the north side of the building a fenced in area
whose door had a chain with a broken lock, which appeared to be a Afresh@ sign of forced
entry.  Sergeant Speckman then entered the building to perform a cursory search
for possible suspects inside and observed an open cash register,  a pair of
scissors on the floor and an open package containing items appearing to match
the scissors, and a makeshift sleeping pallet near where Ali laid, whose pillow
contained blood.  After an ambulance team transported Ali to the hospital,
Sergeant Speckman and two officers who had arrived conducted a more thorough
search of the premises.  They found a change tray by the front of the building
but no suspects.  Sergeant Speckman ultimately called the homicide division
because he thought Ali=s injuries were serious, and he explained
that the homicide division handles cases that involve seriously injured
victims. 








The State next called Sergeant Glen Riddle of the Houston
Police Department Homicide Division Crime Scene Unit, who testified that he
arrived on the scene at 7:25 a.m. to document, photograph, collect, and process
evidence.  Sergeant Riddle corroborated Sergeant Speckman=s description of
the north side door to the fenced in area as having signs of forced entry,
namely a bent padlock, and his general description of the scene inside.  He
further testified that inside the fenced area, there was a freshly damaged door
which opened directly into the building, and the damage was likely created with
a loud noise.  In addition to Sergeant Speckman=s description of
items inside the building, Sergeant Riddle also found a two-and-a-half foot
long steel pole, a section of a wooden two-by-four, and a package of beer on
the floor near the scissors.  Although Sergeant Riddle collected five cards
with fingerprints lifted from the steel pole and various other items at the
scene, none of the fingerprints lifted matched appellant=s or other persons= in the case.  He
further noted that there was blood splattered on display cases near the
sleeping pallet, which indicated that a blow or injury to the head had been
received near the pallet and supported the theory that Ali was struck while on
the ground.  Sergeant Riddle also testified that about thirty minutes into his
investigation, officers located Collins in a room in the back of the store. 
Sergeant Riddle additionally recalled that appellant was one of several
witnesses officers spoke with at the scene, but did not know the substance of
the discussion. 

The State then called Ali, who testified that he began
working at the 99 Cent Store for the owner and his friend, Mohammad Pirzada,
about three months before the incident.  Ali=s shift lasted
from 8:30 p.m. to about 6:30 a.m., and after midnight, he locked the front
doors and never opened or allowed customers inside the store; customers could
request and pay for items only by using a window on the side of the building. 
Ali explained he sometimes slept on the pallet during his shift and that
customers would knock on the window for service.  On cross-examination, in an
attempt to impeach Ali, defense counsel referenced a store cash register
receipt from the night in question allegedly indicating beer was sold after
midnight,[2]
but Ali denied ever selling beer to customers after midnight because it was
against the law. 








Ali testified that on the night of the incident, Collins
came to the store around 11:00 p.m. and that he gave Collins a television, who
then retired to a back room in the store where he sometimes slept.  Then,
around 1:00 a.m., as he placed money into the cash register after a sale, Ali
saw appellant and Collins in the cash register area.  Collins demanded to see
Ali=s hands, and Ali
complied, putting up his hands.  According to Ali, appellant then hit him on
the left side of his head with a steel pipe.  Ali also saw Collins holding a Aknife or something@ and observed him Ago into the
register.@  After appellant struck him again in the head with
the pipe, Ali fell to the floor unconscious.  On cross-examination, Ali offered
conflicting testimony as to whether he let appellant in the front door of the
store at 1:00 a.m. or whether he saw appellant for the first time at 1:00 a.m.
and did not know how appellant entered the store because Ali had locked all the
doors.

Ali returned home from the hospital after seventeen or
eighteen days, and he claimed he told Pirzada sometime in early June that
appellant and Collins had injured him.  He stated that police came to ask him
some questions the day after he left the hospital, and he told them he was not
ready to talk.  At their next meeting, which he said was the next day, the
police showed him some pictures, and he identified appellant=s picture as the
person who had hit him.  On cross-examination, Ali gave conflicting accounts as
to whether he received medicine in the hospital, and admitted he continued taking
medicine Afor my safety of my head@ at the time of
trial.    








The State next called Pirzada, who testified that appellant
worked as a security guard and handyman for the store, and stated that both
appellant and Collins had keys to the store and could come and go from the
store as they pleased.  He stated that appellant and Collins often complained
that Ali watched over them, as Ali had caught them stealing from the store
before, and that appellant and Collins had asked Pirzada to ask Ali to not
interfere in their work.  Pirzada also testified that he saw appellant speaking
with police at the scene.  In the weeks following the incident, Pirzada visited
Ali in the hospital and at his home, and, after four or five visits, Ali told
him appellant and Collins had hit Ali.  Pirzada maintained that Ali
consistently named appellant and Collins as the perpetrators, but, since Ali
did not give any details, Pirzada waited to contact anyone about what Ali had
revealed to him.  Thereafter, when Ali regained his Afull
conscious[ness],@ he told Pirzada the details of what
appellant and Collins did, and Pirzada then contacted the police with this
information.  On cross-examination, Pirzada maintained that Ali could not and
would not sell beer from the store after midnight, but he admitted seeing a
receipt from the night of the incident indicating that someone sold beer after
midnight.  

The State finally called Officer A.D. Brown, a detective
for the Houston Police Department Homicide Division who was dispatched to the
scene.  Officer Brown corroborated the other officers= descriptions of
the crime scene and testified that he spoke with appellant and Israel McKinney,
a witness, at the scene.  According to Officer Brown, appellant kept repeating AWhere is Leroy?@  McKinney told
Officer Brown he saw four black males in a blue Ford Expedition getting beer at
the store at 2:00 a.m. and gave Brown specific descriptions of their physical
attributes and clothing.  McKinney said later, at 4:40 a.m., he saw the same
Expedition parked by the back door of the store and the same four black males
kicking and tearing at the gate, and he then heard a loud, shotgun-like bang
and saw two of them go into the store.








Based on McKinney=s statements,
Officer Brown searched for these or other suspects for three weeks to no
avail.  Officer Brown then visited Ali on June 17, 2005 after he came home from
the hospital.  Although Ali did not feel well and did not discuss the case in
detail, both Ali and Pirzada did inform Officer Brown they thought appellant
was the perpetrator.  Ali, however, did not see appellant in any of the photos
Brown showed him.  On June 28, 2005, Brown returned to Ali=s house with a
photo lineup containing appellant=s picture, asked
Ali if he recognized anyone in the lineup, and Ali recognized appellant=s picture.  Ali
then gave Brown his account of what happened, which largely tracked Ali=s testimony at
trial; but, Brown specifically noted that Ali told him he saw Collins taking
money out of the cash register.  Brown additionally testified that a metal pipe
is considered a deadly weapon capable of causing serious bodily injury or
death.  On cross-examination, Officer Brown stated that, although Ali told police
he had not sold beer after hours, the receipt indicated someone at the store
had in fact done so the night of the incident, which gave McKinney=s story more
credibility.  He also admitted he was Asomewhat stunned@ by Ali=s implication of
appellant on June 28 and conceded that all other information to date pointed to
the suspects McKinney described.  Officer Brown further noted, however, that
McKinney did not provide any information regarding the attack itself.

In his case in chief, appellant called only one witness,
Sergeant W.P. Booth of the Houston Police Department Homicide Division. 
Sergeant Booth spoke with appellant at the scene, and, when Booth informed
appellant that someone had been injured inside the store, appellant replied, A[W]ell, where=s Leroy?@  After Collins
had been discovered in the store, Sergeant Booth asked appellant for his
contact information, which proved accurate.  

The jury convicted appellant of aggravated robbery, and the
trial court sentenced him to forty years= confinement. 
Appellant now claims the evidence is legally and factually insufficient to
support his conviction and to prove the prior convictions used to enhance his
sentence.  

II.  Legal and Factual Sufficiency

In issues one and two, appellant contends the evidence is
legally and factually insufficient to support his conviction for aggravated
robbery.  In evaluating a legal sufficiency claim attacking a jury=s finding of
guilt, we view the evidence in the light most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  We do not ask whether
we believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318B19 (1979). 
Rather, we determine only whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Cardenas v.
State, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000).  In our review, we accord
great deference A>to the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (quoting Jackson,
443 U.S. at 319).  








In conducting a factual sufficiency review of the jury=s determination,
we do not view the evidence Ain the light most favorable to the
prosecution.@  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). Rather, we look at all evidence in a neutral light and will
reverse only if (1) the evidence is so weak that the finding seems clearly
wrong and manifestly unjust or, (2) considering conflicting evidence, the
finding, though legally sufficient, is nevertheless against the great weight
and preponderance of the evidence.  See Watson v. State, 204 S.W.3d 404,
414B15 (Tex. Crim.
App. 2006).  However, it is not enough that we may harbor a subjective level of
reasonable doubt to overturn a finding that is founded on legally sufficient
evidence.  See id. at 417.  We cannot conclude that a finding is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted differently had we
been the fact finder.  See id.  Nor can we declare that a conflict in
the evidence justifies a new trial simply because we may disagree with the
factfinder=s resolution of that conflict.  See id.  Rather,
before ordering a new trial, we must first be able to say, with some objective
basis in the record, that the great weight and preponderance of the (albeit
legally sufficient) evidence contradicts the verdict.  See id.








A person commits robbery if, in the course of committing
theft and with intent to obtain or maintain control of the property, the person
(1) intentionally, knowingly, or recklessly causes bodily injury to another or
(2) intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.  See Tex.
Pen. Code Ann. ' 29.02(a) (Vernon 2003).  The offense
becomes aggravated if the person uses or exhibits a deadly weapon.  See id. ' 29.03(a)(2)
(Vernon 2003).  A Adeadly weapon@ is (1) a firearm
or anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury or (2) anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.  See id. ' 1.07(17) (Vernon
2003).  Appellant contends the State relied solely on Ali=s testimony to
establish the elements of robbery.  He maintains that we should review such
testimony with Agreat caution@ because of its
disjointed and contradictory nature and asserts that his attack on Ali=s credibility at
trial created  reasonable doubt sufficient to undermine the jury=s verdict.  In
support of his legal and factual sufficiency challenges, appellant points to
the following evidence:

$                  
The cash
register sales receipt allegedly proving the sale of beer in violation of the
TABC, which contradicts Ali=s testimony that he did not sell beer after hours; 

$                  
Evidence that
two independent witnesses saw the 99 Cent Store=s doors open after hours, which contradicts Ali=s testimony that he closed and
locked the front door at midnight; 

$                  
Mark Watson=s[3]
and McKinney=s observations that the front door
to the store was open after midnight, which contradicts Ali=s statement that he set the store=s alarm when he closed and locked
the doors; 

$                  
The five
fingerprint cards lifted from the evidence failed to connect appellant to the
offense; 

$                  
The lack of
scientific evidence connecting appellant to the offense, namely the lack of
blood evidence; 

$                  
Ali=s failure to immediately identify
appellant, whom Ali personally knew, to the police officers when they visited
Ali=s home on June 17, 2005, several
weeks after the robbery;  

$                  
McKinney=s observation that four black males
at the store attempted to gain entry on the north side of the store; 

$                  
Watson=s statements to the police that he
observed these four individuals getting beer after hours at the store;

$                  
Appellant
voluntarily approached police officers responding at the scene to inquire about
his friend, Collins, who was asleep inside the store, which appellant claims is
Aatypical@ behavior for someone who had
committed an aggravated robbery; and

$                  
Appellant
complained about Ali while working at the store, which suggests a possible
motive for Ali to identify appellant as the robber.

 













We find appellant=s contentions lack
merit for several reasons.  First, in imploring us to view Ali=s testimony with Agreat caution@ and in
maintaining that his attack on Ali=s credibility
created reasonable doubt, appellant essentially asks us to reevaluate the jury=s credibility
determinations, and we decline to substitute our own judgment for that of the
jury or substantially intrude upon the jury=s role as the sole
judge of the weight and credibility of witness testimony.  See Vasquez v.
State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).  Second, although Ali=s testimony was at
times contradictory regarding certain detailsCincluding, for
example, the dates of his meetings with the police and whether he took
medication for his head injuryChis testimony regarding his identification
of the perpetrators and the details of the incident was substantially
corroborated at trial by Officer Brown and Pirzada.  See Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (A[A] witness may be
believed even though some of his testimony may be contradicted and part of his
testimony recorded, accepted, and the rest rejected.@).  Third, the
lack of fingerprint or scientific evidence does not in itself establish that
appellant=s conviction was supported by insufficient evidence,
as a conviction may be based on the testimony of only one eyewitness.  See,
e.g., Walker v. State, 180 S.W.3d 829, 832 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (finding legally sufficient evidence to support
conviction for aggravated robbery where conviction was based on testimony of
single eyewitness).  Fourth, regarding the eyewitness observations of four
other possible suspects at the scene, the jury was free to determine the weight
to give to this evidence, and we cannot say this evidence outweighs the
evidence of appellant=s guilt, namely Ali=s detailed
recollection of the events, which was corroborated by testimony and some
physical evidence, and Ali=s identification of appellant as the
perpetrator.  See Ates v. State, 21 S.W.3d 384, 392B93 (Tex. App.CTyler 2000, no
pet.) (finding evidence factually sufficient to support jury=s finding that
appellant committed murder where evidence of guilt was largely circumstantial
and jury, as factfinder, could have disregarded evidence of three other
potential suspects as weak and unpersuasive); Reeves v. State, 969
S.W.2d 471, 479B80 (Tex. App.CWaco 1998, pet.
ref=d) (finding
evidence factually sufficient to support jury=s finding that
appellant committed murder where evidence of guilt was entirely circumstantial
and jury, as factfinder, could have disregarded evidence of other potential
suspects as weak and unreliable).  Fifth, as to Ali=s alleged failure
to Aimmediately@ identify appellant
as the perpetrator to Officer Brown on June 17, 2005, we note that Ali did in
fact identify appellant to Officer Brown during the course of the meeting, and,
in any case, even a total failure to identify the defendant on one occasion
goes only to the weight of that person=s testimony.[4] 
See Sharp, 707 S.W.2d at 614. 

Based on our review of the record and according appropriate
deference to the jury=s determinations, we conclude that a
rational trier of fact could have found the essential elements of aggravated
robbery beyond a reasonable doubt.  Viewing the evidence in a neutral light, we
further conclude that the evidence of guilt is not so weak that the verdict is
clearly wrong or manifestly unjust or that the verdict is against the great
weight and preponderance of the evidence.  We overrule issues one and two.

III.  Prior Convictions








In issue three, appellant contends the trial court erred in
admitting copies of judgments and sentences for appellant=s prior
convictions during the punishment phase of his trial to enhance his punishment
range because there was insufficient evidence that he was the person named in
these documents.  Aggravated robbery constitutes a first-degree felony carrying
a punishment range of five to ninety-nine years or life imprisonment.  See Tex. Pen. Code Ann. '' 12.32(a), 29.03(b) (Vernon
2003).  The State may seek to enhance this range to fifteen to ninety-nine
years or life by alleging and proving one prior felony conviction.  See id. ' 12.42
(c)(1) (Vernon
Supp. 2006).  To establish that a defendant has been convicted of a prior
offense, the State must prove beyond a reasonable doubt that (1) a prior
conviction exists, and (2) the defendant is linked to that conviction.  Flowers
v. State, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007).  The State may
establish a prior conviction by admitting certified copies of a judgment and a
sentence and authenticated copies of the Texas Department of Corrections
records including fingerprints, supported by expert testimony identifying them
as identical with known prints of the defendant.  Beck v. State, 719
S.W.2d 205, 209 (Tex. Crim. App. 1986).  The State may also use circumstantial
evidence to prove the defendant is the same person named in the alleged prior
convictions.  See Human v. State, 749 S.W.2d 832, 835B36, 839 (Tex.
Crim. App. 1988).  The factfinder looks at the totality of the evidence to
determine whether the State proved the prior conviction beyond a reasonable
doubt.  See Flowers, 220 S.W.3d at 923.  

In support of its enhancement allegations, the State
introduced four Harris County Jail cards reflecting, among other offenses,
three prior felonies.  Each of the cards contained appellant=s full name, date
of birth, the offense charged, the cause number, the court, and fingerprints. 
The State called Deputy Katherine Mills of the Harris County Sheriff=s Office=s Crime Scene
Unit, who testified that she took appellant=s fingerprints in
the courtroom and that his fingerprints matched those found on the jail cards. 
The State then introduced a New Mexico jail card reflecting a felony offense,
and Deputy Mills testified that the fingerprints on this jail card also matched
appellant=s.  The State thereafter introduced copies of
judgments and sentences for each of the offenses on the jail cards.  Appellant
objected to the judgments and sentences for failing to contain fingerprints
with identifiable characteristics that could link the documents to him.  In
response, the State adduced, through testimony from Deputy Mills, that each of
the judgments and sentences for the Harris County offenses contained the same
name (AHarold Vincent
Gilmore@), cause number,
and convicting court found on the corresponding jail cards, which, as noted,
contained appellant=s identified fingerprints.  As to the New
Mexico documents, Deputy Mills testified that the judgment and sentence
contained the same name (AHarold Vincent Gilmore@), birth date, and
social security number found on the jail card, and also contained appellant=s identified
fingerprints.








We conclude that, based on the totality of the evidence,
the State produced sufficient evidence to prove beyond a reasonable doubt that
appellant was linked to the offered prior convictions.  Deputy Mills identified
the fingerprints on the jail cards as appellant=s and thus
sufficiently linked appellant to the offenses on these cards.  She then matched
up the jail cards with the corresponding judgments and sentences by noting the
identifying information found on each, such as appellant=s name, birth
date, and social security number, and the offense=s cause number.  See
id. at 924B25 (finding sufficient evidence of prior DWI
conviction where State introduced (1) county clerk=s computer
printout of DWI conviction containing cause number, sentence, and appellant=s name, address,
birth date, social security number, and other personal descriptors and (2)
appellant=s driver=s license record
containing same birth date, address, and personal descriptors as printout,
picture of appellant, and information regarding same DWI conviction); Lavinge
v. State, 64 S.W.3d 673, 675 (Tex. App.CHouston [1st
Dist.] 2001, no pet.) (finding sufficient evidence of prior rape conviction
where State introduced (1) jail card containing appellant=s fingerprints, as
identified through expert testimony and (2) indictment with transcript of plea
proceedings containing same charge and sentence as reflected on jail card).  As
such, the trial court did not err in admitting the prior convictions.  We
overrule issue three. 

Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

 

 

_____________________________

Leslie Brock Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 24, 2007.

Panel consists of
Justices Yates, Edelman, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The State tried appellant and Collins together as
co-defendants.





[2]  Appellant did not admit a copy of this receipt at
trial. 





[3]  Watson spoke to the police at the scene, but his
statements to police were not substantially developed at trial.  Officer Brown
did concede that Watson stated he saw the front doors to the store open after
midnight on the date of the incident. 





[4]  Appellant also suggests Ali failed to name appellant
as the perpetrator to Pirzada before the police visited his home on June 17. 
Pirzada testified to the contrary at trial, maintaining that Ali told him in
early June that appellant and Collins were the perpetrators, and the jury was
free to believe this testimony.