Affirmed and Memorandum Opinion filed December 16, 2008








Affirmed
and Memorandum Opinion filed December 16, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-01072-CR

_______________

 

IVERY DWAYNE DORSEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 228th District Court


Harris County, Texas

Trial Court Cause No. 1097367 

                                                                                                                                                

 

M E M O R A N D U M   O P I N I O N

A jury
convicted appellant Ivery Dwayne Dorsey of murder and sentenced him to twenty
years= confinement in the Texas Department
of Criminal Justice, Institutional Division.  In a single issue, appellant
contends  the trial court erred by denying his motion for an instructed verdict
of acquittal.  We affirm.








I.  Background

Appellant
was indicted for the felony offense of murder, alleged to have occurred on July
10, 1994.  That night, several armed gunman broke into a residence located at
5426 Hirondel Avenue in Houston.  Two men inside the house, Willie Williams and
Clifford Tyler, were both injured.  Another person inside the house, Charles
Monroe, was killed.  After the murder, police were unable to develop any
suspects.  But years later, Tyler, one of the original witnesses to the
shooting, identified appellant as one of the gunmen.  At appellant=s trial in December 2007, the
following evidence was presented.

During
the late evening hours on July 10, 1994, a resident on Hirondel Avenue near the
house where the offense occurred was awakened by the sound of car doors
slamming outside his house.  This neighbor looked outside his bedroom window
and saw a car parked across the street from his home, also located on Hirondel
Avenue in Houston.  He watched as several young African American men got out of
the car, opened the trunk, and armed themselves with shotguns or hand guns
taken out of the trunk.  He saw the young men, each holding a gun, walk towards
5426 Hirondel Avenue.  When they passed out of sight, he called 911 from his
kitchen phone.  While talking to the 911 operator, he heard numerous shots
fired.  Once he gave the location of his house, he hung up the phone and
returned to the window.  The neighbor saw the same young men returning to the
car, walking slowly and calmly.  The police arrived about 15 to 20 minutes
after the men left in their vehicle.  The neighbor was never able to identify
any of the young men he saw that night.








Meanwhile,
Willie Williams, Clifford Tyler, and Charles Monroe were at their residence at
5426 Hirondel.[1]  Willie, who
was 23 years old at the time, explained that the three of them, along with
their friend Jason Williams, had rented the house so they could sell crack
cocaine from it.  That evening, Willie was cutting Tyler=s hair in the front room of the
house.  Monroe went into a nearby room to lay down on the couch.  While Willie
was standing in front of Tyler with his back to the front door, he heard the
door being kicked open and gun shots.  He saw a light-skinned African American
male approaching him with a gun; he immediately tried to run away.  He also saw
another dark-complected African American male holding a pump action shot gun. 
He did not see either of these assailants well enough to identify them because
events transpired so quickly and he was running away from the shooters.  He
escaped to a nearby motel where he got the motel clerk to call an ambulance
because a bullet had grazed his head.  He spoke to police about two days after
the shooting occurred, but did not reveal that they had been dealing drugs out
of the house.

Tyler,
who was 17 years old at the time of Monroe=s murder, was facing the front door
when the gunmen barged in.  He saw Aa tall guy and two short guys.@  Although he did not identify
appellant at the time, Tyler testified at trial that appellant was holding a
pump shotgun.[2]  Tyler was
shot in his upper thigh, left testicle, and in the back of his head.  Even
though shot, he managed to escape the house by running out through the
kitchen.  Tyler continued to hear shots fired after he escaped the residence. 
He fell down in the yard of a friend=s house a few streets away.  An
ambulance transported Tyler to the hospital, where he had surgery to repair his
gunshot wounds.  He was in the hospital for more than three days.

While he
was in the hospital, Detective Clement Abbondandolo (AAbby@), a homicide investigator with the
Houston Police Department, came to interview him.  Tyler did not tell Detective
Abby that they had been selling drugs out of the residence or that he
recognized appellant.  Tyler testified that he did not admit he knew appellant
was one of the gunmen because he was Avery scared@ at the time.  He explained his
willingness to come forward years later as follows:








I was
getting older.  And every time my mother always talked to me and I got tired of
lying to her, telling her that I didn=t
know what happened.  And she told me I had nothing to be afraid of.  And at
that time, I was like I really don=t >cause I=m
grown now.

Tyler also asserted that
he was not under the influence of drugs or alcohol on the evening of the
murder, although he admitted that he had been convicted of two counts of
possession of a controlled substance and one count of theft subsequently.  He
also testified that he had regularly sold and used the narcotic Afry@ after the murder, beginning around
1997.  

Detective
Abby was dispatched to the murder scene in July 1994.  He found numerous 12-
and 20-gage shotgun shells at the scene.  He also discovered the decedent,
Charles Monroe, lying face down outside the residence.  Abby testified that he
interviewed Tyler at the hospital and observed that Tyler was very frightened
when he spoke with him.  Abby stated, AI felt like the first few times I
spoke with him he was not being honest with me . . . .  He
was afraid.@  Abby followed-up with Tyler several times after the murder; in 2006,
when Abby received some new information, he set up an in-person interview with
Tyler.  According to Abby, Tyler no longer seemed afraid.  Abby obtained
information from Tyler that was Ahelpful@ to the investigation and spoke with
Tyler several more times.  He developed a photo array in May 2006 containing
appellant=s photograph.  Tyler identified appellant in the array.  Abby stated that
Willie Williams also tentatively identified appellant from the array, but could
not be sure.  Abby testified that, as part of his investigation, he also
interviewed Kelton Smith, who was incarcerated for aggravated assault.[3] 
According to Abby, Smith told him that appellant admitted killing Monroe. 
Smith, however, testified that appellant did not talk to him about what
happened on July 10, 1994.








According
to an assistant medical examiner with the Harris County Medical Examiner=s Office, Monroe suffered shotgun
wounds to the face and neck, chest, and abdomen.  Monroe also suffered a
gunshot wound to the abdomen.  All four of the injuries suffered by Monroe
constituted Aserious bodily injury.@  The medical examiner testified that the cause of Monroe=s death was shotgun wounds to the
chest and face and neck, with the other shotgun and gunshot wounds to the
abdomen classified as Asignificant.@

At the
close of the State=s evidence, appellant sought an instructed verdict of
acquittal.  The trial court denied the motion, and the defense rested.  The
jury convicted appellant of murder and sentenced him to 20 years= confinement in the Texas Department
of Criminal Justice, Institutional Division.  The trial court rendered judgment
on the jury=s verdict, and this appeal timely followed.  

II.  Issue Presented

In a
single issue, appellant contends the trial court erred in denying his motion
for an instructed verdict of acquittal.

III.  Sufficiency of the Evidence

A.        Standard of Review








We treat
a complaint concerning a trial court=s failure to grant a motion for an
instructed or directed verdict as a challenge to the legal sufficiency of the
evidence.  Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App.
1996); Mapes v. State, 187 S.W.3d 655, 658 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).  Appellant has also included the
standard of review for a factual sufficiency analysis in his briefing of this
issue, but a challenge on appeal to the trial court=s denial of a motion for an
instructed verdict is a challenge to the legal sufficiency of the evidence
only.[4]  See
Williams, 937 S.W.2d at 482; Mapes, 187 S.W.3d at 655; see also
Turner v. State, 101 S.W.3d 750, 761 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (AAlthough appellant phrases his
challenge to the trial court=s ruling on his motion for directed verdict as one of factual
sufficiency, the law is well‑settled that a challenge on appeal to the
denial of a motion for directed verdict is a challenge to the legal sufficiency,
not the factual sufficiency of the evidence.@).   

When
reviewing the legal sufficiency of the evidence, we do not ask whether we
believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318‑19 (1979).  Rather, we examine all the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Id. at 319; Mason v. State, 905
S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).  We consider both direct and
circumstantial evidence and all reasonable inferences that may be drawn
therefrom in making our determination.  See Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).  Although we consider all evidence presented
at trial, we may not re‑weigh the evidence and substitute our judgment
for that of the jury. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000) (en banc).  In other words, the jury is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony, and it
is the exclusive province of the jury to reconcile conflicts in the evidence.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc).

B.        Application

Here,
appellant asserts two primary arguments in challenging the sufficiency of the
evidence.  First, he contends that no witnesses testified that they saw
appellant shoot Monroe.  Second, he complains that the only witness who
connected appellant with the offense, Clifford Tyler, Awas totally not credible.@








Regarding
appellant=s first argument, the jury charge in this case authorized the jury to
convict appellant either as a principal or a party to the offense of murder.  A
person commits murder if he intentionally or knowingly causes the death of an
individual or intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. ' 19.02(b)(1), (2) (Vernon 2003).  He
acts as a party if he intentionally promotes or assists the commission of
murder by soliciting, encouraging, directing, aiding, or attempting to aid
another person to commit the offense. Id. at '' 7.01, 7.02. 

AEach fact need not point directly and independently to the
guilt of the appellant, as long as the cumulative effect of all the
incriminating facts are sufficient to support the conviction.@ Guevara v. State, 152 S.W.3d
45, 49 (Tex. Crim. App. 2004) (affirming conviction of appellant as a party to
his wife=s murder based on motive, conflicting
statements, and other circumstantial evidence).  Furthermore, a conviction may
be based on the testimony of a single eyewitness.  Walker v. State, 180
S.W.3d 829, 832 (Tex. App.CHouston [14th Dist.] 2005, no pet.) (citing Aguilar v.
State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)).








Here,
the evidence established that a group of armed young men burst into the house
on Hirondel Avenue, with guns firing.  Two of the three individuals inside the
house, Willie Williams and Clifford Tyler, managed to escape with gunshot
injuries.  The third person inside the house, Charles Monroe, did not escape
and was killed.  Appellant was later identified by Tyler as one of the armed
gunmen.  Tyler also testified that appellant was armed with a shotgun.  The
cause of Monroe=s death was multiple shotgun wounds to the face and neck and
chest.  Although no witness actually saw appellant shoot Monroe, the jury could
reasonably infer from the evidence, at a minimum, that appellant was promoting
or assisting the commission of the offense by encouraging, directing, or aiding
another in committing the murder; i.e., was a party to the murder.  Tex. Penal Code Ann. '' 7.01, 7.02, 19.02(b)(2).  In fact, a
reasonable juror could infer from the evidence that appellant intentionally or
knowingly caused Monroe=s death or intended to cause serious bodily injury and
committed an act clearly dangerous to human life that caused the death of
Monroe; i.e., was the principal gunman. Id. ' 19.02(b)(1), (2).  

Finally,
turning to the credibility of Tyler, the jury heard the testimony of Tyler and
his reasons for waiting so long before identifying appellant.  Jurors were also
informed about Tyler=s history of drug abuse and were aware that he had lied for
over ten years about not knowing who was responsible for Monroe=s murder.  The jury no doubt took
these facts into consideration in weighing the credibility of Tyler=s testimony.  See Wesbrook,
29 S.W.3d at 111.  We may not re-weigh the evidence and substitute our judgment
for that of the jury.  King, 29 S.W.3d at 562.  

C.        Conclusion

In sum,
viewing the evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could have found that appellant, as a principal
or a party, committed the murder of Monroe. We therefore overrule appellant=s sole issue.  The judgment of the
trial court is affirmed.

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed December 16, 2008.

Panel consists of Chief Justice
Hedges, and Justices Guzman and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  There was also testimony that another individual,
identified only as ABud,@ was at the
house that evening.





[2]  Tyler explained that he knew appellant from middle
school and from seeing him around some apartments in the neighborhood.





[3]  Smith testified that he was friends with appellant
around the time of the murder.





[4]  Moreover, as discussed more fully infra,
appellant bases his factual sufficiency challenge almost entirely on the
credibility of Tyler and directs us to no evidence contrary to the jury=s verdict.   But in a factual sufficiency review, we
must avoid intruding on the factfinder=s
role as the sole judge of the weight and credibility of the witness testimony. 
Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (en banc).  (A[D]ue deference must be accorded the fact finder=s determinations, particularly those determinations
concerning the weight and credibility of the evidence.@ (emphasis added)).  Thus, for the same reasons the
evidence is legally sufficient, it is likewise factually sufficient.