NO. 07-09-00114-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 9, 2010

_____

BRANDON KEITH MILES, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 58,805-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Brandon Keith Miles, was convicted of robbery[1] and sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for a period of five years and assessed a fine of $1,500. Appellant appeals alleging that the evidence was legally and factually insufficient. We affirm.

_____

[1] See TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003).

## Factual and Procedural Background

On October 23, 2008, Ashley Harris and Patrick Ledford left their apartment at the Huntington Pointe Apartments to get something to eat. When they got to Ledford's car, Harris had the keys and was going to drive. As Harris opened the car door, a black male approached her with a salutation and held out his hand as if to shake hands with her. The assailant grabbed Harris and attempted to pull her toward him. Harris was able to pull away and backed off from the assailant. Upon hearing and seeing what was happening, Ledford grabbed the assailant by the arm and attempted to spin him around to face Ledford. The assailant pulled his shirt up and put his hand in the waist band of his pants stating, "All I want is your keys. I need to go home. I have a gun." Harris then threw the keys toward the assailant, who picked them up off the ground and hurried off around one of the buildings in the apartment complex. Harris and Ledford were both extremely frightened by the incident and, upon gaining access to a phone, called 911.

The first officer to respond was Justin Castillo of the Amarillo Police Department. Castillo arrived on the scene and obtained a description of the events and a partial description of the assailant. Both witnesses described the assailant to be a black male, wearing a black "do-rag," blue jersey-type T-shirt, and blue jeans. The victims stated the assailant was between 6' and 6'1" in height. Each victim thought that they would be able to recognize the assailant if they saw him again, however, Harris was less sure of this than Ledford. After taking down the information from the victims and reporting the

2

incident, Castillo spoke to the apartment maintenance man, Armando Mondragon, who had arrived to change the locks on the victims' apartment.[2]

Castillo quizzed Mondragon about knowing anyone within the apartment complex that might fit the general description of the assailant. Mondragon advised that he had seen someone that might fit the description on the other side of the apartment complex. Upon finding out the apartment where the possible suspect might be found, Castillo went to apartment 1102. At apartment 1102, Castillo questioned appellant, Boris Wyatt, and Mauricio Rubio. None of the three individuals were dressed in clothing consistent with what the victims had described the assailant as wearing. All three denied any knowledge of or involvement in the robbery.

Castillo then left the scene only to be called back a short time later. Upon returning to the victims' apartment, Castillo learned that the car that the keys went to had been stolen. The victims described hearing the alarm on the car go off and seeing the car being driven out of the apartment's parking lot. Neither victim saw the perpetrator get in the vehicle. Castillo reported the car as stolen and left the scene. Later, at about 6:15 to 6:30 a.m., Castillo returned to the apartment and advised the victims that the stolen car had been involved in a wreck near Wichita Falls and that a suspect, Boris Wyatt, was in custody.

Detective Louis Sanchez of the Amarillo Police Department was assigned to the robbery case on October 27, 2008. Upon learning about the wrecked car and capture

_____
[2] The lock change was required because the apartment key was on the same key ring with the car keys.

3

of Boris Wyatt, Sanchez prepared a photo lineup that included Wyatt's picture. Both Harris and Ledford came to the police department headquarters and viewed the photo lineup. Neither was able to pick anyone out of the lineup. A second lineup was prepared that same day and the victims were asked to come back to the police station to view it. At the time Harris and Ledford were shown the lineup, they were not allowed to speak with each other and each had their own individual copy of the photo lineup to view. Each picked out appellant as the perpetrator of the robbery.

Prior to trial, the record reflects that there was no motion filed that contested the fairness or validity of the lineup procedure used by the police. Likewise, during trial, appellant's counsel did not object to the introduction of the photo lineups that Harris and Ledford viewed. At trial, both victims identified appellant as the perpetrator of the robbery. Appellant's trial counsel vigorously cross-examined both victims regarding their ability to see the perpetrator and what they had told the police on the night of the incident regarding their ability to identify the perpetrator. Even so, Harris and Ledford were steadfast in their identification of appellant.

The appellant's defense was that the witnesses were simply mistaken in their identification. Appellant's argument was that, since it was Wyatt who was found in the wrecked car, it must have been Wyatt who accosted the victims in the parking lot and took the keys. The jury convicted appellant, thereby impliedly rejecting his contention, and sentenced appellant to five years in the ID-TDCJ and assessed a fine of $1,500. By four issues, appellant attacks the legal and factual sufficiency of the evidence.

4

Disagreeing with appellant, we find the evidence legally and factually sufficient and affirm the judgment of the trial court.

## Sufficiency of the Evidence

Appellant challenges both the legal and factual sufficiency of the evidence. Therefore, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

## Standard of Review

Legal Sufficiency

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

<u>Factual Sufficiency</u>

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. <u>See</u> <u>Watson v. State</u>, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. <u>See</u> <u>id</u>. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. <u>See</u> <u>id</u>. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. <u>Sims v. State</u>, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Texas Court of Criminal Appeals has recently declared that, when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner against a "hypothetically correct jury charge." <u>Vega v. State</u>, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing <u>Wooley v. State</u>, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Analysis

To sustain a conviction for the offense of robbery, the State had to prove beyond a reasonable doubt that 1) appellant, 2) on or about the 26th day of October, 2008, 3) while in the course of committing theft of property, and with intent to obtain and maintain

6

control of said property, 4) intentionally or knowingly, 5) threatened or placed Ashley Renee Harris in fear of imminent bodily injury or death.  As stated above, the only contested issue at trial was the identity of appellant as the perpetrator of the crime.  The record establishes all of the other elements of the offense without any objection or challenge by appellant.

In addressing the issue of identity, appellant contends that the victims' testimony was not reliable because neither one gave a detailed description of the assailant at the scene, Harris had stated that the assailant was wearing a blue jersey-type T-shirt, while at trial she said it was a red jersey-type T-shirt; and both witnesses said they did not get a good look at the assailant because the event happened so fast.  Additionally, appellant seems to be contending that the identification during trial was not reliable.

Prior to addressing appellant's issue on the legal sufficiency of the evidence, the question of reliability of the in-court identification should be considered.  As noted in the factual and procedural background portion of this opinion, appellant never challenged the in-court identification of appellant by the witnesses by way of a pretrial motion or an objection.  Therefore, to the extent that appellant may be attempting to now challenge the in-court identification based upon some alleged taint in the photo lineup, that issue was waived by appellant's inaction before and during trial.  See TEX. R. APP. P. 33.1(a)(1).

Legal Sufficiency

The testimony at trial established that both witnesses identified appellant in a photo lineup within a few days of the robbery.  At trial, both witnesses again identified

appellant as the perpetrator of the crime. Appellant's trial counsel conducted a very thorough cross-examination of both witnesses. During the cross-examination, trial counsel pointed out some inconsistencies between the witnesses' trial testimony and what they told the initial officer on the scene. At the end of the day, each witness was solid in their identification of appellant, both in the photo lineup and at trial. In this case, there are two eyewitnesses, whereas we are instructed that the testimony of a single eyewitness is sufficient to support the conviction of an accused. See Aguilar v. State, 468 S.W.2d 75, 77 (Tex.Crim.App. 1971); Walker v. State, 180 S.W.3d 829, 832 (Tex.App.—Houston [14th Dist.] 2005, no pet.).

When applying the standard of reviewing the evidence in the light most favorable to the jury's verdict, we cannot say that this jury acted irrationally when it found appellant guilty beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, we overrule appellant's contention that the evidence was legally insufficient.

Factual Sufficiency

In reviewing the record for the factual sufficiency of the evidence, we do so without the prism of "in the light most favorable to the jury's verdict." Watson, 204 S.W.3d at 415. Appellant contends that, based upon the cross-examination of the identity witnesses, the identification was unreliable. This is so for a number of reasons. First, the officer's identification of the jersey the assailant wore as blue differed from Harris's trial testimony that it was red. Second, each witness told the officer they were not sure if they could identify the assailant and that they did not get a good look at the

8

assailant. Finally, Wyatt, who was around the scene of the robbery with appellant, was later found in possession of the car stolen from Ledford by using the keys that the assailant had previously obtained. See Sims, 99 S.W.3d at 603 (requiring a reviewing court to address the most important evidence that appellant contends undermines the confidence of the court in the jury's verdict.) Appellant's analysis totally ignores the fact that both witnesses viewed a photo lineup with Wyatt's picture in it and neither of them identified Wyatt as having been the perpetrator of the robbery. In fact, upon viewing a subsequent photo lineup containing appellant's picture, each witness quickly identified appellant as the assailant. The factual sufficiency of the evidence as to identification simply boils down to the jury's reconciling some conflicting testimony. It is the jury's job to reconcile the conflicts in the testimony. See Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). Further, the weight to be given the evidence is also within the province of the jury. Id. Finally, as stated in the legal sufficiency portion of this opinion, the testimony of a single eyewitness is sufficient to convict a defendant. Aguilar, 468 S.W.2d at 77; Walker, 180 S.W.3d at 832.

Therefore, we cannot say that the jury acted irrationally in finding appellant guilty beyond a reasonable doubt nor can we say that the great weight and preponderance of the evidence contradicts the jury's verdict. Watson, 204 S.W.3d at 415. Accordingly, we overrule appellant's issues regarding the factual sufficiency of the evidence.

Conclusion
9

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Do not publish.