Affirmed and Memorandum Opinion filed August 7, 2007








Affirmed and Memorandum Opinion filed August 7, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00441-CR

____________

 

RICHARD EUGENE COLLINS, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
District Court

Harris County, Texas

Trial Court Cause No. 1021705

 



 

M E M O R A N D U M   O P I N I O N

Appellant Richard Eugene Collins, Jr. was convicted of
capital murder and sentenced to confinement for life in the Texas Department of
Criminal Justice, Institutional Division.  On appeal, appellant contends that
the trial court reversibly erred in denying his motion to suppress, and that
the evidence is legally and factually insufficient to show that he acted with
the intent to obtain or maintain control of property belonging to the
complainant, James Alexander.  We affirm.








Factual
Background

On the evening of March 29, 2005, eleven-year-old Davon
McFarland watched from his kitchen window as appellant shot and killed James
Alexander.  Davon knew Alexander as AOld School@ and appellant as ASqueaky.@  He was watching
the two men because he thought something might happen when he saw them sitting
together in Alexander=s van, which was stopped on Clover Street.


Appellant sat in the van=s passenger side,
and Alexander sat in the driver=s seat.  Appellant had a black gun in his
hand, which he pointed at Alexander and fired several times.  Davon heard three
shots.  Davon=s mother also heard the shots and ordered him to get
on the floor.  But, Davon did not stay on the floor; he returned to the window
and saw appellant get out of Alexander=s van with a Akhaki-colored@ suitcase. 
Appellant got into the passenger side of a waiting station wagon and fled down
the street.

Davon recognized the khaki-colored suitcase from earlier in
the day.  For unknown reasons, Alexander came to the neighborhood in his van
during the day and showed Davon Aa lot of money@ in the suitcase. 
Davon saw appellant take the same suitcase from the van after he heard the
gunshots.  At trial, appellant=s private investigator testified Davon
told her he did not see appellant take anything after the murder.  Appellant
admitted, however, in a videotaped statement to police that Alexander had shown
him money earlier in the day and asked him to kill Michael Babers, appellant=s cousin.[1] 
He also admitted he saw a silver suitcase in the van during the shooting.








At the scene, police recovered three .45 caliber shell
casings from a semi-automatic pistol.  Police also found a wallet hanging
partially out of the van, a watch on the ground with a broken band, and five
one dollar bills in a wad on the van=s driver=s side seat.  The
assistant medical examiner who performed the autopsy on Alexander found five
gunshot wounds to his body, including three to his back, one to his wrist and
one to his abdomen.  He determined that Alexander=s death was caused
by multiple gunshot wounds.

In the early morning hours after the shooting, appellant
turned himself in to the Southeast patrol station, claiming that he had just
shot someone on Clover Street in self-defense.  After the police confirmed that
a shooting had occurred on Clover Street, appellant was transported to the
homicide division to meet with the officers handling the case.  

At the homicide division, appellant met with Officer
Baimbridge and Officer Ruland.  Baimbridge and Ruland interviewed appellant for
approximately one and one-half hours as appellant gave a videotaped statement. 
At the start of the interview, the officers read appellant his rights, and
appellant indicated that he understood and waived those rights.  Although
Baimbridge was alone with appellant briefly before the interview began, the
door to the interview room remained open and appellant was not handcuffed. 
Appellant claimed he turned himself in because he wanted to tell his side of
the story.  During the interview, the officers gave appellant food, a soft
drink and coffee, and allowed him to take a restroom break when he requested
it.

Appellant asserted that Alexander had attempted to hire him
to kill Michael Babers, and also that Alexander wanted to buy drugs from him. 
Although appellant gave several explanations for his actions, he repeatedly
stated that he shot Alexander with a black .45 caliber semi-automatic handgun. 
He claimed that he fired the gun when he saw Alexander reach for a gun, but
later stated he did not know if Alexander had a gun or not.  








In the interview, appellant implicated himself, his
relatives, and another person in a plot to rob or Ajack@ Alexander of the
money he showed appellant earlier in the day.  Appellant admitted he got into
the van to get the money, and referred to the crime as a robbery or Ajack[ing].@  He explained how
he expected to divide the money between the participants, but claimed he did
not take the suitcase despite seeing it behind the driver=s seat.  He
believed his aunt or cousin stole the suitcase after he fled in the station
wagon.  He did admit that he said to Alexander, Agive me the money,
give me the money,@ as they were Atussling.@  When he saw
Alexander reach down, appellant stated that he fired as Alexander=s back was turned
to him.  Appellant explained that he fired his gun two more times and showed
how Alexander sat partially inside the van with one foot out.

At the end of the this interview, appellant admitted he
gave his statement of Ahis own free will,@ and that he was
not promised anything in exchange for it.  That evening, at approximately 7:45
p.m., Officer Ruland brought appellant back for another interview to discuss
additional information received from witness interviews.  Ruland read appellant
his rights, and appellant waived them.  In this recorded statement, appellant
again admitted that he intended to rob Alexander for his money, but denied
taking the suitcase.

Appellant moved to suppress his recorded statements,
contending that, before the first interview began, Officer Baimbridge pushed
him against a wall, intimidated him, and told him he had to give a statement. 
Baimbridge denied threatening, coercing, or physically assaulting appellant. 
The trial judge denied appellant=s motion to
suppress, without findings of fact or conclusions of law.  

Analysis
of Appellant=s Issues

A.      The Motion
to Suppress

In his first issue, appellant contends the trial court
committed reversible error in denying his motion to suppress the recorded
statements he gave to the police, because the statements were coerced in
violation of his constitutional right to due process.  According to appellant,
before the first interview with police, Officer Baimbridge physically abused
and intimidated him, causing him to become fearful of the officer.  But for
this fear, appellant claims, he would not have given any statement.

1.       The
Applicable Law








Although appellant claims that admitting the statement
violates the Fifth and Fourteenth Amendments to the United States Constitution
and article 38.21 of the Texas Code of Criminal Procedure, appellant does not
separately brief each issue.  Instead, appellant briefs the issue generally
under a single section of his brief.  Therefore, we will address appellant=s constitutional
and statutory claims in the same way to resolve the question of the trial court=s alleged error.  See
Heitman v. State, 815 S.W.2d 681, 690B91 n.23 (Tex.
Crim. App. 1991) (treating state and federal constitutions as providing the
same protections when appellant does not argue that they should be interpreted
differently).

The burden of proof at the suppression hearing is on the
prosecution.  Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App.
1995).  It must prove by a preponderance of the evidence that the defendant
gave his statement voluntarily.  Id.  Under federal due process, a
statement is involuntary if the defendant was offered inducements of such a
nature or coerced to such a degree that the inducements or coercionCnot his own free
willCproduced the
statement.  See id.  Under Texas law, article 38.21 of the Code of
Criminal Procedure requires that the statement be Afreely and
voluntarily made without compulsion or persuasion.@  Tex. Code Crim. Proc. art. 38.21.  In
determining the question of voluntariness, a court should consider the totality
of circumstances under which the statement was obtained.  Creager v. State,
952 S.W.2d 852, 855 (Tex. Crim. App. 1997).  The ultimate question is whether
the appellant=s will was overborne.  Id. at 856.

2.       Standard
of Review








We review a trial court's ruling on a motion to suppress
evidence under an abuse of discretion standard.  See Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  At a suppression hearing, the
trial court is the sole fact-finder and may choose to believe or disbelieve any
or all of the witnesses= testimony.  Alvarado v. State, 853
S.W.2d 17, 23 (Tex. Crim. App. 1993).  We give almost total deference to the
trial court=s determination of historical facts when supported by
the record, particularly if the findings turn on witness credibility and
demeanor.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The same deference is accorded to
determinations of mixed questions of law and fact if their resolution depends
upon witness credibility and demeanor.  Ross, 32 S.W.3d at 856.  Mixed
questions of law and fact that do not turn on an evaluation of credibility and
demeanor are considered under a de novo standard.  Id.  We will sustain
the trial court=s ruling if it is reasonably supported by
the record and is correct on any theory of law applicable to the case.  Villarreal,
935 S.W.2d at 138.

3.       No Abuse of Discretion Shown

The trial court held a hearing on appellant=s motion to
suppress at which Officer Baimbridge and appellant testified.  State=s Exhibit 1, the
videotape of appellant=s statement, was admitted for purposes of
the hearing only.  

Baimbridge testified that appellant turned himself in,
saying that he wanted to talk about what happened.  Appellant was read his
rights, and appellant stated that he understood these rights and agreed to give
a statement.  Baimbridge testified that he never coerced or threatened
appellant before or during the interview.  Further, appellant was provided with
coffee, food, and a soft drink, and he was given a bathroom break when he
requested it.  Baimbridge also testified that neither he nor Officer Ruland
promised appellant anything in exchange for his statement.  On
cross-examination, Baimbridge acknowledged he and appellant were alone briefly
before the interview, but he denied grabbing appellant, throwing him against a
wall, or telling him he needed to give a statement.








Appellant testified that Baimbridge pushed him up against
the wall and Aintimidated@ him.  Baimbridge
also told him he had to give a statement.  Appellant testified he was afraid
and thought he could be injured.  He also stated that he would not have made
the statement if he had not been coerced.  However, on cross-examination,
appellant admitted that he voluntarily went to the police station because he
wanted to make a statement.  Appellant also stated that he found Officer Ruland
to be Areal nice,@ and agreed that
he had made similar comments in the videotaped statement.  But, appellant did
not mention his claims of intimidation or abuse to Ruland during the second
interview when Ruland interviewed him without Baimbridge.  Moreover, at the
conclusion of the first interview, appellant acknowledged that he came in Aof his own free
will@ and that he
understood his rights as they were read to him.

Having reviewed the evidence, we hold that appellant cannot
demonstrate an abuse of discretion.  The trial judge weighed the witnesses= credibility and
chose to accept Officer Baimbridge=s testimony and
reject appellant=s testimony.  See Masterson v. State,
155 S.W.3d 167, 171 (Tex. Crim. App. 2005) (holding that trial court had
discretion to disbelieve appellant=s testimony even
if it was not controverted).  Moreover, the videotaped statement supports the
trial court=s ruling.  Therefore, we overrule appellant=s first issue.

B.      The Legal
and Factual Sufficiency of the Evidence

Texas law provides that a person commits murder if the
person Aintentionally or
knowingly causes the death of an individual.@  See Tex. Penal Code ' 19.02(b)(1).  The
crime rises to the level of capital murder when the person Aintentionally
commits the murder in the course of committing or attempting to commit . . .
[a] robbery.@  Tex. Penal
Code ' 19.03(a)(2).  A person commits robbery if, in the
course of committing theft and with the intent to obtain or maintain control of
the property, he intentionally, knowingly, or recklessly causes bodily injury
to another.  See Tex. Penal Code
' 29.02(a)(1).   In
his second and third issues, appellant contends the State introduced legally
and factually insufficient evidence to establish that he acted with the intent
to obtain or maintain control of property belonging to the complainant.

1.       Standards
of Review








Evidence is legally insufficient if, when viewed in a light
most favorable to the verdict, a rational jury could not have found each element
of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319 (1979); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).  The jury is the exclusive judge of the credibility of witnesses and of
the weight to be given testimony, and it is also the exclusive province of the
jury to reconcile conflicts in the evidence.  Jones, 944 S.W.2d at 647. 
Thus, when performing a legal-sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of
the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999).  We must resolve any inconsistencies in the testimony in favor of the
verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

When conducting a factual-sufficiency review, we view all
of the evidence in a neutral light.  See Cain v. State, 958 S.W.2d 404,
408 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 134 (Tex.
Crim. App. 1996).  We may set the verdict aside if (1) the evidence is so weak
that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is
against the great weight and preponderance of the evidence.  Watson v. State,
204 S.W.3d 404, 414B15 (Tex. Crim. App. 2006) (citing Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).  However, while we may
disagree with the jury=s conclusions, we must exercise
appropriate deference to avoid substituting our judgment for that of the jury,
particularly in matters of credibility.  Drichas v. State, 175 S.W.3d
795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d at 414
(stating that a court should not reverse a verdict it disagrees with, unless it
represents a manifest injustice even though supported by legally sufficient
evidence).  Finally, we must discuss the evidence that, according to appellant,
most undermines the jury's verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

2.       The
Evidence is Legally and Factually Sufficient

Appellant acknowledges that Davon McFarland=s testimony that
he saw appellant leave with a briefcase was Asome evidence@ that appellant
had the intent to obtain or maintain property belonging to Alexander at the
time of the murder, but contends the State made no attempt to establish that
the briefcase Davon saw appellant take was the same briefcase Davon saw
earlier.  Appellant also points to his private investigator=s contradictory
testimony that Davon told her he did not see appellant with a briefcase when he
got out of the car.  Additionally, appellant contends that a lack of intent to
commit theft is shown because he did not take Alexander=s wallet, watch,
or cash, all of which remained at the scene.








However, as appellant acknowledges, the State first
established appellant=s intent through the testimony of Davon
McFarland.  Davon testified that he saw appellant take a suitcase from
Alexander=s van after shooting him.  He also testified that,
earlier in the day, Alexander had shown him a large amount of money in the same
suitcase.  Appellant sought to refute the evidence with the testimony of his
private investigator, who claimed Davon told her he did not see appellant take
anything from the van.  The jury, however, could have chosen to believe Davon=s testimony over
the private investigator=s testimony.  Davon=s testimony, as an
eye-witness, provided the jury with sufficient evidence to convict appellant of
capital murder.  See Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim.
App. 1971) (testimony of one eyewitness may be sufficient to support a jury=s verdict); Walker
v. State, 180 S.W.3d 829, 832 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (same).

The jury also had additional evidence provided by appellant=s recorded
statements admitting his intention.  In his second statement, appellant
explained he intended to Ajack@ Alexander for his
money and agreed Ajack@ meant robbery. 
In his first statement, he repeatedly referred to robbing or jacking Alexander
of his money.  Appellant also gave detailed information about his accomplices
and how he intended to divide the money among them.  Therefore, even if the
jury chose to believe appellant=s claims that he did not take the
money-filled suitcase from the van after murdering Alexander, appellant=s admission that
he intended to rob Alexander supported the capital murder conviction.  See
Bustamante v. State, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003) (stating,
in capital murder case, that A[w]hile no completed theft occurred, proof
of a completed theft is not required to establish the underlying offense of
robbery or attempted robbery@).  Further, the jury charge gave the jury
the option of finding appellant guilty of simple murder, but they chose to
convict him of the greater crime of capital murder after reviewing the ample
evidence of appellant=s intention to rob Alexander.

Having reviewed the record, we hold that the evidence is
both legally and factually sufficient to support the jury=s verdict. 
Accordingly, we overrule appellant=s second and third
issues.

The trial court=s judgment is
affirmed.








 

 

 

/s/      Wanda McKee
Fowler

Justice

 

 

Judgment rendered and Memorandum
Opinion filed August 7, 2007.

Panel consists of Justices
Anderson, Fowler, and Frost.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 









[1]  According to appellant, Alexander did not know
Babers was related to him.