Affirmed and Memorandum Opinion filed May 8, 2008








Affirmed and Memorandum Opinion filed May 8, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00461-CR

____________

 

SAMUEL RICHMOND WALKER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause No. 943669

 



 

M E M O R A N D U M  O P I N I O N

A jury found appellant, Samuel Richmond Walker, guilty of
aggravated robbery and assessed punishment at forty-five years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  See Tex.
Penal Code Ann. ' 29.03(a)(2) (Vernon 2003).  In three
issues, appellant argues (1) the evidence is legally insufficient to support
his conviction, (2) the evidence is factually insufficient to support his
conviction, and (3) the trial court erred in admitting hearsay testimony.  We
affirm.








Factual and Procedural Background

On June 15, 2002, a man robbed complainant, Matilde
Delgado, at gunpoint in a Wal-Mart parking lot.  Matilde and her three sons had
been shopping at Wal-Mart, and as Matilde returned to her car and got in, the
robber approached the driver=s side window with a gun.  The robber
pointed the gun at Matilde=s chest and demanded she turn over her
purse.  Matilde did not understand the robber because she did not speak
English, so her son, Erik, who was sitting in the front passenger seat,
translated for her.  Erik told his mom to Agive [the robber]
the bag because he=s going to kill you.@  Matilde was
unable to back out and get away from the robber because a red car was parked
directly behind her car.  A woman was sitting in the driver=s seat of the red
car.  Out of fear the robber would kill her and her children, Matilde gave the
robber her purse.  After grabbing Matilde=s purse, the
robber jumped into the passenger side of the red car and fled the scene. 
Matilde=s purse contained
identification cards, social security cards, a checkbook, credit cards, cash,
and approximately $1,000 worth of gold jewelry.

 Deputy John Nimmo of the Harris County Sheriff=s Office responded
to the call and arrived at the scene shortly after the robber fled.  The
Wal-Mart manager flagged Nimmo down and directed him to Matilde and her sons. 
According to Nimmo, Matilde was emotionally distraught.  Matilde did not speak
English, so Nimmo asked Erik to translate for Matilde.  Nimmo admitted during
trial he called for a Spanish-speaking deputy to come to the scene, but nobody
came to assist him.  Nimmo testified Erik was upset but able to communicate
effectively with him.  Erik informed Nimmo the robber had a silver revolver and
had fled in a red Ford Focus.  Erik also gave Nimmo what he thought was the
license plate number of the car.  Nimmo questioned several other people in the
parking lot, but they could not provide any information.  While conducting his
investigation, Nimmo did not remove any fingerprints from Matilde=s car.  Nimmo
subsequently referred the case to the detective bureau for further
investigation.








Michael Parinello, a detective for the Harris County
Sheriff=s Office, reviewed
the report Nimmo submitted.  Parinello checked the license plate number
provided in the report, but he could not find a car registered under that
number.  According to Parinello, he tried several variations of the numbers but
was still unsuccessful.  Because the license plate number was incorrect and no
suspect was named in the report, the usual procedure was to suspend the case. 
However, on June 17, 2002, Officer Catherine Richards of the Houston Police
Department received a dispatch regarding two women in need of attention. 
Richards arrived at the scene and found Patricia Hagen lying on the ground in
need of medical attention.  The other woman, Deidre (Davis) Dangerfield, was
standing to the side watching.  Dangerfield was highly intoxicated, so Richards
arrested her for public intoxication.  While searching Dangerfield=s purse, Richards
discovered a gun and some of Matilde=s stolen
property.  Richards later called Matilde, and Matilde informed her Parinello
was the detective on the case.  Richards then contacted Parinello and informed
him about the suspect she arrested and the property she recovered.








After receiving this information, Parinello spoke with
Dangerfield.  Dangerfield told Parinello that ALow Down@ and APocahontas@ gave her the
stolen property.  Parinello ran the two aliases through his computer, but it
did not produce any information.  He then asked the Houston Police Department
to run the names, and he discovered ALow Down@ was Samuel Walker=s alias and APocahontas@ was Norvala Ramos=s alias.  Using
the name Samuel Walker, Parinello found a picture of appellant in his computer
database.  Parinello then compiled a photo spread that included appellant=s picture. 
Matilde, Erik, and Edgar[1]
viewed the photo spread.  Matilde could not identify the robber based on the
pictures, but Erik positively identified appellant.  Parinello testified Erik
recognized appellant immediately and did not appear to waver or have any doubts
about his certainty.  Parinello also compiled a photo spread with Dangerfield=s picture, but no
one was able to identify her.

During trial, Matilde testified that, while she was sitting
in the driver=s seat of her car, she sensed someone at her window. 
She testified she turned and saw a strong, black man pointing a gun at her
chest.  According to Matilde, a portion of the gun was covered by appellant=s sleeve, but she
could tell the gun was black.  Matilde could not remember if she had previously
stated the gun was silver.  Matilde testified the man stood at her window for
approximately two minutes.  Matilde admitted she looked at the man=s face, but she
also testified she was very frightened and did not look at his face long enough
to identify him.  Additionally, Matilde testified the woman driving the getaway
car had a lot of braids in her hair.   

Erik testified he left Wal-Mart before his mother and
brothers, went to his mother=s car, rolled down the windows, and
listened to music.  While waiting in his mother=s car, Erik
noticed a red car circling around the parking lot.  According to Erik, after
his mother and brothers returned to the car, a man approached them and pointed
a gun at his mother=s chest.  Erik testified he looked
straight at the man and Adidn=t take [his] eyes
off of him.@  Erik testified he only saw a portion of the gun
because the man was wearing long sleeves, and he stated the gun might have been
black but he could not really remember.  Erik estimated the man stood at the
car for approximately twenty to thirty seconds before he jumped into the red
car and fled.  Erik described the driver of the car as a woman with Apuffy hair.@  After the car
sped away, Erik and his brother tried to memorize the license plate number.








According to Erik, within a few weeks after the incident,
Parinello showed him a photo spread.  Erik testified he immediately recognized
appellant as the robber.  Erik also made an in-court identification of
appellant, and he testified his in-court identification was based on his
observations from the day of the robbery.  Erik testified he would have
recognized appellant even if he had not seen his picture in the photo spread. 
According to Erik, he had no doubt appellant was the man who robbed his mother.

On cross-examination, Erik admitted he did not remember
telling the police the gun was silver, and he did not remember previously
testifying appellant was wearing a hood.  Erik also testified he was positive
he had memorized the correct license plate number, and he did not remember the
number turned out to be incorrect.

Appellant did not testify on his own behalf, and the
defense did not call any witnesses.  The jury subsequently found appellant
guilty of aggravated robbery and assessed punishment at forty-five years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  See id. 
This appeal followed.  

Discussion

A.      Is the
Evidence Legally and Factually Sufficient to Support Appellant=s Conviction?

In his first two issues, appellant argues the evidence is
legally and factually insufficient to support his conviction for aggravated
robbery.

1.       Standard
of Review








In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d. 560 (1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim.
App. 2005).  The jury, as the sole judge of the credibility of the witnesses,
is free to believe or disbelieve all or part of a witness=s testimony.  Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We do not engage in a second
evaluation of the weight and credibility of the evidence, but only ensure the
jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.
 First, when considered by itself, evidence supporting the verdict may be
so weak the verdict is clearly wrong and manifestly unjust.  Id.  Second,
where the evidence both supports and contradicts the verdict, the contrary
evidence may be strong enough the beyond-a-reasonable-doubt standard could not
have been met.  Id.  In conducting a factual sufficiency review, we must
employ appropriate deference so we do not substitute our judgment for that of
the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).  Our analysis must consider the evidence appellant claims is most
important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 

2.       Analysis

Appellant=s complaints regarding the legal and
factual sufficiency of the evidence all focus on the State=s failure to
sufficiently prove the robber=s identity.  Specifically, appellant
argues the evidence is legally and factually insufficient for the following
reasons: (1) the complainant was unable to identify appellant as her assailant
even though she was in the best position to observe the robber, and she
testified she looked at the robber=s face; (2) the
State failed to call certain witnesses to testify; (3) Erik was not in an
optimal position to make an observation of the assailant; (4) some of Erik=s testimony
contradicted some of his mother=s testimony; (5) Erik was unable to recall
some of his previous statements; (6) the license plate number Erik provided was
incorrect; and (7) the State relied on inadmissible hearsay to establish
appellant=s identity and connect him to the case.[2]














 All of appellant=s arguments fail. 
First, Matilde=s failure to make a positive identification does not,
in and of itself, render the jury=s verdict
improper.  See Santos v. State, 116 S.W.3d 447, 459 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d); Conyers v. State, 864 S.W.2d
739, 740 (Tex. App.CHouston [14th Dist.] 1993, pet. ref=d).  Despite
appellant=s contention that Matilde was in the best position to
observe the robber, Matilde testified she was very frightened and did not look
at his face long enough to identify him.  Second, the testimony of one
eyewitness is sufficient to support a jury=s verdict.  Aguilar
v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); Walker v. State,
180 S.W.3d 829, 832 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  Erik
testified he looked straight at the robber and Adidn=t take [his] eyes
off of him.@  According to Erik, Parinello showed him a photo
spread, and he immediately recognized appellant as the robber.  He also made an
in-court identification of appellant, and he testified his in-court
identification was based on his observations from the day of the robbery. 
Additionally, Erik testified he would have recognized appellant even if he had
not seen his picture in the photo spread, and he had no doubt appellant was the
man who robbed his mother.  Parinello testified Erik recognized appellant
immediately and did not appear to waver or have any doubts about his
certainty.  Therefore, Erik=s testimony was sufficient evidence. 
Third, the State does not have to call every witness to the stand.  As just
discussed, the testimony of one eyewitness is sufficient.  Aguilar, 468
S.W.2d at 77; Walker, 180 S.W.3d at 832.  Lastly, appellant=s remaining
arguments contravene the well-established standard of review for a jury=s evaluation of
the credibility of witnesses. The jury is the sole judge of the facts, the
credibility of the witnesses, and the weight to be given the evidence.  Wyatt
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29
S.W.3d 148, 151 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  In addition,
the jury may believe or disbelieve all or part of any witness=s testimony.  Jones,
984 S.W.2d at 258.  Reconciliation of any conflicts in the evidence falls
within the exclusive province of the jury.  Heiselbetz v. State, 906
S.W.2d 500, 504 (Tex. Crim. App. 1995) (en banc). Thus, the jury was entitled
to believe all or part of Erik=s testimony and make reasonable inferences
therefrom.

Furthermore, Parinello testified Dangerfield told him ALow Down@ and APocahontas@ gave her the
stolen property.  After learning this information, Parinello discovered ALow Down@ was Samuel Walker=s alias. 
Parinello testified he used the name Samuel Walker and found a picture of
appellant, which he included in a photo spread.  Erik subsequently viewed the
photo spread and identified appellant as the robber.  

Viewing the evidence in the light most favorable to the
verdict, we hold the evidence is legally sufficient to support appellant=s conviction for
aggravated robbery beyond a reasonable doubt.  See Salinas, 163 S.W.3d at 737.  Viewing the
evidence in a neutral light, we hold the evidence supporting the verdict is not so
weak the verdict is clearly wrong and manifestly unjust; nor was the contrary
evidence so strong the beyond-a-reasonable-doubt standard could not have been
met.  See Prible, 175 S.W.3d at 730B31.  Thus, the
evidence is factually sufficient to support appellant=s conviction.  We
overrule appellant=s first two issues.

B.      Did the
Trial Court Err by Admitting Alleged Hearsay Testimony?








In his third issue, appellant argues the trial court
improperly allowed the State to introduce inadmissible hearsay testimony during
the trial.  According to appellant, the trial court allowed Parinello, over
objection, to testify about information given to him by Dangerfield.  Appellant
argues this information allowed the jury to learn the connections between
appellant (as ALow Down@), Ramos (as APocahontas@), Dangerfield,
and the stolen property through improper hearsay.  Appellant claims Parinello=s testimony was Abackdoor hearsay@ or Ahearsay by
inference,@ which has been condemned by this court.  See Deary
v. State, 681 S.W.2d 784, 788 (Tex. App.CHouston [14th
Dist.] 1984, pet. ref=d).  According to appellant, this evidence
was harmful because it improperly corroborated Erik=s identification
of appellant and Erik=s testimony during trial, and it informed
the jury of appellant=s prior record with law enforcement.

1.       Waiver

Appellant complains about the following testimony the
prosecutor elicited from Parinello:

Q:      Now, during the pendency of your
investigation, did you learn any aliases of Samuel Walker?

MR. CORDOVA:     Objection, calls
for hearsay.

THE COURT:          Overruled. 
That=s a yes-or-no question.

A:      Yes, I did.

Q:      (By Mr. Loper) And what was that alias?

A:      Low Down.

Q:      What is it you did with that information,
Detective?

A:      Well, I started researching our computers
for any information regarding a Low Down and I could not find anything in our
computer system.

Q:      By researching your computers, do you mean
literally plugging those names in and seeing what you get?

A:      Yes.

Q:      At any point during your investigation, were
you provided information that led you to a Norvala Ramos?

A:      That=s correct.

Q:      And during your investigation, did you learn
of any aliases of Norvala Ramos?

A:      Well, yes.  Do you want me to give you the
name?

MR. CORDOVA:     Objection.  Calls
for hearsay.

Q:      (By Mr. Loper) Did you learn of an alias?

A:      Yes, I did.  I=m sorry.








Q:      What was that alias?

A:      Pocahontas.     

Parinello then went on to explain how he eventually obtained
a photograph of Samuel Walker, which he included in a photo spread.  Parinello
showed the photo spread to Matilde, Erik, and Edgar, and Erik positively
identified appellant.  Later, Parinello testified regarding his contact with
Dangerfield.  According to Parinello, he spoke with Dangerfield because she was
in possession of the stolen property.  Parinello testified it was not until
after he spoke with Dangerfield that he focused his investigation on the name ALow Down.@  Defense counsel
did not object to any of this later testimony.

However, appellant fails to point out that defense counsel
elicited this same information on cross-examination.  The following exchange
occurred between defense counsel and Parinello:

Q:      You said you spoke to Deidre Dangerfield and
recovered the property from her.  Is that true?

A:      I did not personally recover the property
from her, no, but it was recovered from her, yes.

Q:      To your knowledge, was she arrested for
public intoxication?

A:      Well, that or a weapons charge.  I can=t be for sure what she was charged
with.

Q:      She was arrested and she had in her
possession the victim=s purse?

A:      She had the checkbook, credit cards, Social
Security cards belonging to her and her children, yes.

Q:      She had all the things that were stolen from
the victim at the Wal-Mart parking lot?

A:      Other than the reported jewelry and cash.

Q:      She also had a gun, didn=t she?

A:      Yes, she did.

Q:      And when you spoke to her, she told you that
Low Down and Pocahontas did it and gave her the things.








A:      She said she received the property from
them, yes.

Q:      And she didn=t tell you ASamuel Walker,@ she said ALow Down,@ right?

A:      Correct.

Q:      And you ran Low Down through the Gang Task
Force computer?

A:      I had HPD check them, yes.

Q:      It came back that Samuel Walker was also
known as Low Down?

A:      Correct.                   

Under well-settled law, when the accused in a criminal case
offers before the jury the same evidence as that to which he objected, or the
same evidence is introduced from another source, he is in no position to
complain on appeal.  Withers v. State, 642 S.W.2d 486, 487 (Tex.
Crim. App. 1982); See Botello v. State, 362 S.W.2d 318, 319B20 (Tex. Crim.
App. 1962) (holding appellant waived his hearsay argument on appeal when the
State elicited similar testimony from other witnesses without objection, and
appellant brought out similar evidence in his cross-examination); Carr v.
State, 726 S.W.2d 608, 610 (Tex. App.CHouston [14th
Dist.] 1987, pet. ref=d) (holding appellant could not complain
on appeal about his sixth amendment rights because appellant provided similar
testimony during trial); Russell v. State, 904 S.W.2d 191, 201B02 (Tex. App.CAmarillo 1995,
pet. ref=d) (holding even
if the testimony admitted was hearsay, appellant failed to show error because
appellant elicited similar evidence later in the trial).  Assuming, without
deciding, Parinello=s testimony was hearsay, appellant cannot
now complain about it on appeal because he brought out sufficiently similar
evidence in his cross-examination of Parinello.  We conclude appellant waived
this argument; therefore, we overrule appellant=s third issue.

 

 

 

 








Conclusion

Having overruled all three of
appellant=s issues, we affirm the trial court=s judgment.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed May 8, 2008.

Panel consists of
Justices Yates, Anderson, and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  Edgar Delgado is one of Matilde=s other sons who was in the backseat of the car the
day of the robbery.





[2]  Appellant argues this court should not consider the
allegedly inadmissible hearsay when conducting its legal and factual
sufficiency review; however, this is an incorrect statement of the law.  An
appellate court must consider all evidence actually admitted at trial in
its sufficiency review and give it whatever weight and probative value it could
rationally convey to a jury.  Moff v. State, 131 S.W.3d 485, 489 (Tex.
Crim. App. 2004).  Thus, even if the trial court erred in admitting Parinello=s testimony, we must consider the improperly-admitted
testimony in assessing the sufficiency of the evidence.  See id. at 489B90.