NO. 07-09-0090-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 20, 2009

______________________________

IN RE BRYN DUFFY, M.D., AND SUSANNE MATTSON-DUFFY, 
INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN, 
GUSTAF DUFFY AND HENRIK DUFFY, RELATORS
_________________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Relators Bryn Duffy, M.D. and Susanne Mattson-Duffy, individually and on behalf
of their minor children, Gustaf Duffy and Henrik Duffy, seek a writ of mandamus directing
the trial court to sustain their pending plea to its jurisdiction and dismiss the underlying
case without prejudice. For the reasons that follow, we will deny relatorsâ petition.
Background
Â Â Â Â Â Â Â Â Â Â On September 12, 2008, relators filed an original petition in the 99th District Court
of Lubbock County alleging witness tampering, commercial bribery, breach of fiduciary
duty, and civil conspiracy by real party in interest, Texas Medical Liability Trust (âTMLTâ). 
Without being served, TMLT filed a responsive pleading.


 
Â Â Â Â Â Â Â Â Â Â Relators filed a notice of non-suit on October 14.


 But on October 16, a visiting
judge signed an order that dismissed the case for want of prosecution. By order signed
November 25, the case was transferred to the 237th District Court of Lubbock County. In
an order signed February 6, 2009, the judge of the 237th District Court withdrew the
October 16 dismissal order. Relators filed a plea to the jurisdiction and motion to dismiss
on March 17. On March 19, relators filed their petition in this court seeking a writ of
mandamus.


 
Analysis
Â Â Â Â Â Â Â Â Â Â Relators seek this courtâs writ of mandamus âdirecting the 237th District Court to
promptly enter an Order of Dismissal Without Prejudice for Lack of Jurisdiction and take
no further action on the case.â Relators predicate their request on an argument that the
plenary power of the trial court expired thirty days after the October 16 dismissal order. 
Â Â Â Â Â Â Â Â Â Â Mandamus will issue only to correct a clear abuse of discretion or the violation of
a duty imposed by law when there is no adequate remedy by appeal. Walker v. Packer,
827 S.W.2d 833, 839-40 (Tex. 1992); see In re Prudential Ins. Co. of Am., 148 S.W.3d
124, 135-36 (Tex. 2004) (explicating adequate remedy by appeal). By their plea and
motion, relators have asked the trial court to determine its jurisdiction. But the trial court
has not ruled on their plea and motion, which had been pending only two days when
relators filed in this court their petition for mandamus, containing the same arguments as
those made to the trial court. Thus, relators have not come to this court complaining of an
order by the trial court.
Â Â Â Â Â Â Â Â Â Â A court may abuse its discretion by failing to execute a ministerial task for which no
discretion attaches, such as refusing to conduct a hearing or rule on a properly pending
motion. See Eli Lilly and Co. v. Marshall, 829 S.W.2d 157, 158 (Tex. 1992). A trial court,
however, has a reasonable time to perform such a duty. In re Blakeney, 254 S.W.3d 659,
661 (Tex.App.âTexarkana 2008, orig. proceeding); Ex parte Bates, 65 S.W.3d 133, 135
(Tex.App.âAmarillo 2001, orig. proceeding). At this stage of the proceedings in the trial
court a hearing and ruling would not be expected since the motion to dismiss was served
on March 18 and the petition filed in this court on March 19. See Tex. R. Civ. P. 21 (a
motion and notice of hearing âshall be served upon all other parties not less than three
days before the time specified for the hearing unless otherwise provided by these rules or
shortened by the courtâ). Relators have not shown a clear abuse of discretion in the trial
courtâs failure to rule on a motion so recently filed. Cf. In re Gonzales, No. 07-06-0324-CV,
2006 WL 2588696, at *1, 2006 Tex. App. Lexis 8057, at *3, (Tex.App.âAmarillo Sept. 6,
2006, orig. proceeding) (mem. op.) (pendency of motion for three months not unreasonable
delay).
Â Â Â Â Â Â Â Â Â Â But relators do not merely ask us to direct the trial court to rule; they ask that we
direct its ruling. We have repeatedly held that we may not direct a trial courtâs decision on
a matter on which it has not ruled. See, e.g., In re Minnfee, No. 07-09-0005-CV, 2009 WL
127851, at *1, 2009 Tex. App. Lexis 332, at *1-2 (Tex.App.âAmarillo Jan. 16, 2009, orig.
proceeding) (per curiam); In re Rey, No. 07-02-0104-CV, 2002 WL 350473, at *1, 2002
Tex. App. Lexis 1673, at *1-2 (Tex.App.âAmarillo Mar. 6, 2002, orig. proceeding) (per
curiam) (not designated for publication). Accord In re Blakeney, 254 S.W.3d at 661; In re
Castle Tex. Prod. Ltd. Pâship, 189 S.W.3d 400, 403 (Tex.App.âTyler 2006, orig.
proceeding); In re Ramirez, 994 S.W.2d 682, 684 (Tex.App.âSan Antonio 1998, orig.
proceeding). That holding is applicable to relatorâs request. 
Conclusion
Â Â Â Â Â Â Â Â Â Â Finding relators have not demonstrated the trial court has committed an abuse of
its discretion or failed in performance of a ministerial duty, we need not consider whether
they have shown they have no adequate remedy by appeal. Accordingly, relatorsâ petition
for writ of mandamus is denied.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â JusticeÂ Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



nUsed="false" Name="Medium Grid 1 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00114-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL B

Â 



JUNE
9, 2010

Â 



Â 

BRANDON KEITH MILES, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE 47TH DISTRICT COURT OF POTTER
COUNTY;

Â 

NO. 58,805-A; HONORABLE HAL MINER, JUDGE



Â 



Â 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Â 

Appellant, Brandon Keith Miles, was
convicted of robbery[1]
and sentenced to confinement in the Institutional Division of the Texas
Department of Criminal Justice (ID-TDCJ) for a period of five years and
assessed a fine of $1,500.Â  Appellant
appeals alleging that the evidence was legally and factually insufficient.Â  We affirm.

Â 

Â 

Factual and Procedural Background

Â Â Â Â Â Â Â Â Â Â Â  On
October 23, 2008, Ashley Harris and Patrick Ledford left their apartment at the
Huntington Pointe Apartments to get something to eat.Â  When they got to LedfordÂs car, Harris had
the keys and was going to drive.Â  As
Harris opened the car door, a black male approached her with a salutation and
held out his hand as if to shake hands with her.Â  The assailant grabbed Harris and attempted to
pull her toward him.Â  Harris was able to
pull away and backed off from the assailant.Â 
Upon hearing and seeing what was happening, Ledford grabbed the
assailant by the arm and attempted to spin him around to face Ledford.Â  The assailant pulled his shirt up and put his
hand in the waist band of his pants stating, ÂAll I want is your keys.Â  I need to go home.Â  I have a gun.ÂÂ  Harris then threw the keys toward the
assailant, who picked them up off the ground and hurried off around one of the
buildings in the apartment complex.Â 
Harris and Ledford were both extremely frightened by the incident and,
upon gaining access to a phone, called 911.

Â Â Â Â Â Â Â Â Â Â Â  The
first officer to respond was Justin Castillo of the Amarillo Police
Department.Â  Castillo arrived on the
scene and obtained a description of the events and a partial description of the
assailant.Â  Both witnesses described the
assailant to be a black male, wearing a black Âdo-rag,Â blue jersey-type
T-shirt, and blue jeans.Â  The victims
stated the assailant was between 6Â and 6Â1Â in height.Â  Each victim thought that they would be able
to recognize the assailant if they saw him again, however, Harris was less sure
of this than Ledford.Â  After taking down
the information from the victims and reporting the incident, Castillo spoke to
the apartment maintenance man, Armando Mondragon, who had arrived to change the
locks on the victimsÂ apartment.[2]Â  

Â Â Â Â Â Â Â Â Â Â Â  Castillo
quizzed Mondragon about knowing anyone within the apartment complex that might
fit the general description of the assailant.Â 
Mondragon advised that he had seen someone that might fit the description
on the other side of the apartment complex.Â 
Upon finding out the apartment where the possible suspect might be
found, Castillo went to apartment 1102.Â 
At apartment 1102, Castillo questioned appellant, Boris Wyatt, and
Mauricio Rubio.Â  None of the three
individuals were dressed in clothing consistent with what the victims had
described the assailant as wearing.Â  All
three denied any knowledge of or involvement in the robbery.Â  

Â Â Â Â Â Â Â Â Â Â Â  Castillo
then left the scene only to be called back a short time later.Â  Upon returning to the victimsÂ apartment,
Castillo learned that the car that the keys went to had been stolen.Â  The victims described hearing the alarm on
the car go off and seeing the car being driven out of the apartmentÂs parking
lot.Â  Neither victim saw the perpetrator
get in the vehicle.Â  Castillo reported
the car as stolen and left the scene.Â 
Later, at about 6:15 to 6:30 a.m., Castillo returned to the apartment
and advised the victims that the stolen car had been involved in a wreck near
Wichita Falls and that a suspect, Boris Wyatt, was in custody.

Â Â Â Â Â Â Â Â Â Â Â  Detective
Louis Sanchez of the Amarillo Police Department was assigned to the robbery
case on October 27, 2008.Â  Upon learning
about the wrecked car and capture of Boris Wyatt, Sanchez prepared a photo
lineup that included WyattÂs picture.Â 
Both Harris and Ledford came to the police department headquarters and
viewed the photo lineup.Â  Neither was
able to pick anyone out of the lineup.Â  A
second lineup was prepared that same day and the victims were asked to come
back to the police station to view it.Â 
At the time Harris and Ledford were shown the lineup, they were not
allowed to speak with each other and each had their own individual copy of the
photo lineup to view.Â  Each picked out
appellant as the perpetrator of the robbery.Â Â Â 


Â Â Â Â Â Â Â Â Â Â Â  Prior
to trial, the record reflects that there was no motion filed that contested the
fairness or validity of the lineup procedure used by the police.Â  Likewise, during trial, appellantÂs counsel
did not object to the introduction of the photo lineups that Harris and Ledford
viewed.Â  At trial, both victims
identified appellant as the perpetrator of the robbery.Â  AppellantÂs trial counsel vigorously
cross-examined both victims regarding their ability to see the perpetrator and
what they had told the police on the night of the incident regarding their
ability to identify the perpetrator.Â 
Even so, Harris and Ledford were steadfast in their identification of
appellant.

Â Â Â Â Â Â Â Â Â Â Â  The
appellantÂs defense was that the witnesses were simply mistaken in their
identification.Â  AppellantÂs argument was
that, since it was Wyatt who was found in the wrecked car, it must have been
Wyatt who accosted the victims in the parking lot and took the keys.Â  The jury convicted appellant, thereby
impliedly rejecting his contention, and sentenced appellant to five years in
the ID-TDCJ and assessed a fine of $1,500.Â 
By four issues, appellant attacks the legal and factual sufficiency of
the evidence.Â  Disagreeing with
appellant, we find the evidence legally and factually sufficient and affirm the
judgment of the trial court.

Sufficiency of the Evidence

Â Â Â Â Â Â Â Â Â Â Â  Appellant
challenges both the legal and factual sufficiency of the evidence.Â  Therefore, we are required to conduct an
analysis of the legal sufficiency of the evidence first and then, only if we
find the evidence to be legally sufficient, do we analyze the factual
sufficiency of the evidence.Â  See Clewis v. State, 922 S.W.2d
126, 133 (Tex.Crim.App. 1996).

Standard of Review

Legal Sufficiency

In assessing the legal sufficiency of
the evidence, we review all the evidence in the light most favorable to the
verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.Â  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004).Â 
In conducting a legal sufficiency review, an appellate court may not sit
as a thirteenth juror, but rather must uphold the juryÂs verdict unless it is
irrational or unsupported by more than a mere modicum of evidence.Â  Moreno v. State, 755
S.W.2d 866, 867 (Tex.Crim.App. 1988).Â  We measure the legal sufficiency of the
evidence against a hypothetically correct jury charge.Â  See Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997).

Â 

Factual Sufficiency

Â Â Â Â Â Â Â Â Â Â Â  When
an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the
evidence in a neutral light, the jury was rationally justified in finding the
appellant guilty beyond a reasonable doubt.Â 
See Watson v. State, 204 S.W.3d 404,
415 (Tex.Crim.App. 2006).Â  In performing a factual sufficiency review,
we must give deference to the fact finderÂs determinations if supported by
evidence and may not order a new trial simply because we may disagree with the
verdict.Â  See id. at 417.Â  As an
appellate court, we are not justified in ordering a new trial unless there is
some objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the juryÂs verdict.Â  See id.Â  Additionally, an appellate opinion addressing
factual sufficiency must include a discussion of the most important evidence
that appellant claims undermines the juryÂs
verdict.Â  Sims v.
State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).Â  The Texas Court of Criminal Appeals has
recently declared that, when reviewing the evidence for factual sufficiency,
the reviewing court should measure the evidence in a neutral manner against a
Âhypothetically correct jury charge.ÂÂ  Vega
v. State, 267 S.W.3d 912, 915 (Tex.Crim.App.
2008) (citing Wooley v. State, 273
S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  To
sustain a conviction for the offense of robbery, the State had to prove beyond
a reasonable doubt that 1) appellant, 2) on or about the 26th day of
October, 2008, 3) while in the course of committing theft of property, and with
intent to obtain and maintain control of said property, 4) intentionally or
knowingly, 5) threatened or placed Ashley Renee Harris in fear of imminent
bodily injury or death.Â  As stated above,
the only contested issue at trial was the identity of appellant as the
perpetrator of the crime.Â  The record
establishes all of the other elements of the offense without any objection or
challenge by appellant.Â  

Â Â Â Â Â Â Â Â Â Â Â  In
addressing the issue of identity, appellant contends that the victimsÂ
testimony was not reliable because neither one gave a detailed description of
the assailant at the scene, Harris had stated that the assailant was wearing a
blue jersey-type T-shirt, while at trial she said it was a red jersey-type
T-shirt; and both witnesses said they did not get a good look at the assailant
because the event happened so fast.Â 
Additionally, appellant seems to be contending that the identification
during trial was not reliable.

Â Â Â Â Â Â Â Â Â Â Â  Prior
to addressing appellantÂs issue on the legal sufficiency of the evidence, the
question of reliability of the in-court identification should be
considered.Â  As noted in the factual and
procedural background portion of this opinion, appellant never challenged the
in-court identification of appellant by the witnesses by way of a pretrial
motion or an objection.Â  Therefore, to
the extent that appellant may be attempting to now challenge the in-court
identification based upon some alleged taint in the photo lineup, that issue
was waived by appellantÂs inaction before and during trial.Â  See Tex.
R. App. P. 33.1(a)(1).Â  

Legal Sufficiency

Â Â Â Â Â Â Â Â Â Â Â  The
testimony at trial established that both witnesses identified appellant in a
photo lineup within a few days of the robbery.Â 
At trial, both witnesses again identified appellant as the perpetrator
of the crime.Â  AppellantÂs trial counsel
conducted a very thorough cross-examination of both witnesses.Â  During the cross-examination, trial counsel
pointed out some inconsistencies between the witnessesÂ trial testimony and
what they told the initial officer on the scene.Â  At the end of the day, each witness was solid
in their identification of appellant, both in the photo lineup and at
trial.Â  In this case, there are two
eyewitnesses, whereas we are instructed that the testimony of a single
eyewitness is sufficient to support the conviction of an accused.Â  See Aguilar v. State, 468
S.W.2d 75, 77 (Tex.Crim.App. 1971); Walker v.
State, 180 S.W.3d 829, 832 (Tex.App.ÂHouston [14th
Dist.] 2005, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  When
applying the standard of reviewing the evidence in the light most favorable to
the juryÂs verdict, we cannot say that this jury acted irrationally when it found
appellant guilty beyond a reasonable doubt.Â 
See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620.Â 
Accordingly, we overrule appellantÂs contention that the evidence was
legally insufficient.

Factual Sufficiency

Â Â Â Â Â Â Â Â Â Â Â  In
reviewing the record for the factual sufficiency of the evidence, we do so
without the prism of Âin the light most favorable to the juryÂs verdict.ÂÂ  Watson, 204 S.W.3d
at 415.Â  Appellant contends that,
based upon the cross-examination of the identity witnesses, the identification
was unreliable.Â  This is so for a number
of reasons.Â  First, the officerÂs identification
of the jersey the assailant wore as blue differed from HarrisÂs trial testimony
that it was red.Â  Second, each witness
told the officer they were not sure if they could identify the assailant and
that they did not get a good look at the assailant.Â  Finally, Wyatt, who was around the scene of
the robbery with appellant, was later found in possession of the car stolen
from Ledford by using the keys that the assailant had previously obtained.Â  See Sims, 99
S.W.3d at 603 (requiring a reviewing court to address the most important
evidence that appellant contends undermines the confidence of the court in the
juryÂs verdict.)Â  AppellantÂs
analysis totally ignores the fact that both witnesses viewed a photo lineup
with WyattÂs picture in it and neither of them identified Wyatt as having been
the perpetrator of the robbery.Â  In fact,
upon viewing a subsequent photo lineup containing appellantÂs picture, each
witness quickly identified appellant as the assailant.Â  The factual sufficiency of the evidence as to
identification simply boils down to the juryÂs reconciling some conflicting testimony.Â  It is the juryÂs job to reconcile the
conflicts in the testimony.Â  See Johnson
v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.
2000).Â  Further, the weight to be given
the evidence is also within the province of the jury.Â  Id.Â 
Finally, as stated in the legal sufficiency portion of this opinion, the
testimony of a single eyewitness is sufficient to convict a defendant.Â  Aguilar, 468 S.W.2d
at 77; Walker, 180 S.W.3d at 832.Â 


Â Â Â Â Â Â Â Â Â Â Â  Therefore,
we cannot say that the jury acted irrationally in finding appellant guilty
beyond a reasonable doubt nor can we say that the great weight and
preponderance of the evidence contradicts the juryÂs verdict.Â  Watson, 204 S.W.3d
at 415.Â  Accordingly, we overrule
appellantÂs issues regarding the factual sufficiency of the evidence.Â  

Â 

Â 

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Having
overruled appellantÂs issues, we affirm the judgment of the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Do not publish.Â  

Â 

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  








Â 











[1]
See
Tex. Penal Code Ann. Â§ 29.02(a)(2) (Vernon 2003).





[2]
The lock change was required because the
apartment key was on the same key ring with the car keys.